IN THE SUPREME COURT OF MISSISSIPPI
NO. 2000-IA-01477-SCT

*STATE OF MISSISSIPPI, RONNIE MUSGROVE, IN HIS OFFICIAL CAPACITY AS GOVERNOR, AND MIKE MOORE, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL*

*v.*

*QUITMAN COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/30/2000 |
| TRIAL JUDGE: | HON. ELZY JONATHAN SMITH, JR. |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ROGER GOOGE, JR. |
| | HAROLD EDWARD PIZZETTA, III |
| ATTORNEYS FOR APPELLEE: | ROBERT B. McDUFF |
| | DENNIS C. SWEET, III |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED & REMANDED - 10/31/2001 |
| MOTION FOR REHEARING FILED: | 11/29/2001; denied 2/21/2002 |
| MANDATE ISSUED: | 2/28/2002 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Quitman County ("the County") brought this civil action for declaratory and injunctive relief in the Quitman County Circuit Court against the State of Mississippi, Governor Ronnie Musgrove, and Attorney General Mike Moore ("the State"). The County alleged that by imposing the obligation to fund the representation of indigent criminal defendants on the County, the State breached its duties under Art. 3, § 26 of the Mississippi Constitution to provide adequate representation for indigent criminal defendants and that the State had breached its duties under the Public Defender System Act of 1998 to provide a statewide, state-funded public defender system. Pursuant to M.R.A.P.5, this Court granted the State permission to take this interlocutory appeal from an order of the circuit court denying the State's motion to dismiss Count I of the County's complaint for failure to state a claim upon which relief can be granted.[(1)]

**FACTS AND PROCEEDINGS BELOW**

¶2. The Legislature of this State has adopted a "county-based system" of providing indigent defense services. *See* Miss. Code Ann. § 25-32-7 (1999), § 99-15-17 (2000). Under this system, Quitman County, through its Board of Supervisors, has the sole responsibility to provide indigent criminal defense services in that county. At the time this action was filed, Quitman County was responsible for funding indigent defense services in all criminal cases. Effective July 1, 2000, the Legislature enacted statutes establishing the Office of Capital Post-Conviction Counsel, the Office of Capital Defense Counsel, and the

Mississippi Public Defender System Task Force. *See* Miss. Code Ann. § 99-39-101 (2000), § 99-18-1 (2000), § 25-32-71 (2000), respectively. After the establishment of these offices, the counties retain responsibility of providing indigent defense services in all non-capital cases.

¶3. In Count I of its complaint, filed December 17, 1999, the County alleged that by imposing the obligation to fund indigent defense on the counties, the State breached its duty under Art. 3, § 26 of the Mississippi Constitution to provide adequate representation for indigent criminal defendants. In Count II of the complaint, the County alleged that the State breached its duties under the Mississippi Statewide Public Defender System Act of 1998 to provide a statewide, state-funded public defender system. The County requested that the circuit court enter a declaratory judgment that the State had breached its duties under Art. 3, § 26 of the Mississippi Constitution; that the State had breached its duties under the Public Defender System Act of 1998; and that Miss. Code Ann. § 25-32-7 and § 99-15-17 are void because they unconstitutionally impose obligations on counties to pay for indigent defense. The County also requested that the circuit court issue an injunction directing the State to provide a statewide, state-funded system of indigent defense. Finally, the County requested that if the State failed to provide such a system within a reasonable period of time, the court prohibit the State from providing funds to district attorneys or law enforcement officials for the prosecution of criminal defendants.

¶4. In its answer, the State raised, among other defenses, the affirmative defense of the County's alleged failure to state claim on which relief may be granted. The parties began extensive discovery, and on July 10, 2000, the State filed its motion to dismiss both causes of action raised by the County. The State argued that Count I of the complaint should be dismissed for failure to state a claim upon which relief may be granted and that Count II of the complaint should be dismissed as moot. The State also argued that the County lacked standing to assert either cause of action.

¶5. On August 31, 2000, the circuit court entered judgment on the State's motion. The court first concluded that the County had standing to sue, finding that the County has a colorable interest in the State's meeting its constitutional obligations and that the County had experienced adverse effects from the State's alleged failure to meet its constitutional obligations. The court rejected the State's assertion that Count I of the complaint failed to state a claim upon which relief could be granted. In its opinion, the circuit court stated that though this Court has expressed reluctance to intervene in the State's compliance with Art. 3, § 26, this Court has found that the Courts and the Legislature have concurrent responsibility for the State's compliance in this area. The circuit court found that the Courts of this State have the authority to order the Legislature to provide a public defender system that complies with Art. 3, § 26, and concluded that the County may be able to show facts to overcome the presumption of the constitutional validity of the State's current public defender system.

¶6. The circuit court granted the State's motion to dismiss as moot Count II of the County's complaint because the Mississippi Statewide Public Defender System Act of 1998 never became effective. Section 21 of the Mississippi Public Defender System Act stated that "all new programs authorized under [the act] shall be subject to the availability of funds specifically appropriated therefor by the Legislature during the 1998 Regular Session or any subsequent session. This act shall be codified, but no amendment to a code section or a repeal of a code section enacted by [the act] shall take effect until the Legislature has funded any new programs authorized hereunder...." The Legislature never provided funding for the Act, and the Act, by its own terms, never became effective.

¶7. The State sought to appeal the circuit court's denial of its motion to dismiss Count I of the County's complaint, and this Court granted the State's petition for interlocutory appeal on October 10, 2000. The County concedes in its brief that the circuit court's dismissal of Count II is not before this Court on appeal.

¶8. The issues raised before this Court on appeal are as follows:

> **I. WHETHER THE COUNTY HAS STANDING TO SUE THE STATE REGARDING AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM ON BEHALF OF ITSELF AND ITS TAXPAYERS?**
>
> **II. WHETHER THE COUNTY'S COMPLAINT FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

## DISCUSSION

> **I. WHETHER THE COUNTY HAS STANDING TO SUE THE STATE REGARDING AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM ON BEHALF OF ITSELF AND ITS TAXPAYERS?**

¶9. This Court must first address the threshold issue of standing. Quitman County brought this action in its own name and on behalf of its taxpayers. The cause of action at issue is premised upon the claim that the State has breached its constitutional duty to provide effective assistance of counsel to Mississippi's indigent criminal defendants.

¶10. The State asserts that Quitman County does not have standing to sue because it is suing on its own behalf upon an ineffective assistance of counsel claim and that "[n]o court . . . has ever held that the Sixth Amendment protects the rights of anyone other than criminal defendants." *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993). *Accord, **Kinoy v. Mitchell***, 851 F.2d 591, 594 (2d Cir. 1988) (holding that the right to counsel creates no rights for the attorney or anyone other than the defendant). Therefore, since Quitman County's complaint named the county board members and the taxpayers only and did not name any person who specifically had been deprived of the effective assistance of counsel, the State claims that Quitman County does not have standing to sue.

¶11. It is well settled that "Mississippi's standing requirements are quite liberal." *__Dunn v. Miss. State Dep't of Health__*, 708 So. 2d 67, 70 (Miss. 1998); *see also __Miss. Gaming Comm'n v. Bd. of Educ.__*, 691 So. 2d 452 460 (Miss. 1997). This Court has explained that while federal courts adhere to a stringent definition of standing, limited by Art. 3, § 2 of the United States Constitution to a review of actual cases and controversies, the Mississippi Constitution contains no such restrictive language. *Van Slyke v. Bd. of Trustees of State Institutions of Higher Learning*, 613 So. 2d 452, 460 (Miss. 1997) (citing *Sosna v. Iowa*, 419 U.S. 393, 397-403, 95 S.Ct. 553, 42 L. Ed. 2d 532 (1975)). Therefore, this Court has been "more permissive in granting standing to parties who seek review of governmental actions." *Van Slyke*, 613 So. 2d at 875. *See also **Dye v. State ex rel. Hale***, 507 So. 2d 332, 338 (Miss. 1988) (holding state senators had standing to sue Lieutenant Governor on charges that their legislative power had been impinged by his power). In Mississippi, parties have standing to sue "when they assert a colorable interest in the subject matter of the litigation or experience and adverse effect from the conduct of the defendant, or as otherwise provided by law." *Fordice v. Bryan*, 651 So. 2d 998, 1003 (Miss. 1995); *State ex rel. Moore v. Molpus,* 578 So. 2d 624, 632 (Miss. 1991).

¶12. Heretofore counties have been permitted to maintain actions against the State to obtain declaratory and injunctive relief against unconstitutional statutes or actions by the state. *See, e.g., **State v. Miss. Ass'n of Supervisors, Inc.***, 699 So. 2d 1221 (Miss. 1997) (Association of Supervisors and counties brought action seeking declaration of unconstitutionality of statutes allowing operators of certain vehicles to apply to Mississippi Department of Transportation rather than counties for permit to operate on non-federal highways); ***State v. Hinds County Bd. of Supervisors***, 635 So. 2d 839, 842 (Miss. 1994) (county brought action seeking declaration of unconstitutionality of statute setting reimbursement to county for housing of state inmates in county jail). A county may sue and be sued pursuant to Miss. Code Ann. § 11-45-17 (1972). Also, a suit may be brought "in the name of a county, where only part of the county or its inhabitants are concerned, and where there is a public right to be vindicated." Miss. Code Ann. § 11-45-19 (1972). *See also **Bd. of Trustees v. Van Slyke***, 510 So. 2d 490, 496 (Miss. 1987) (where standing by individuals and boards is also permitted in Mississippi in any "action . . . concerning a matter of general public interest. . . .").

¶13. Here, the question at hand is whether Quitman County has asserted a colorable interest in the subject matter of the litigation or experienced an adverse effect from the conduct of the defendant. Clearly, Quitman County has asserted a colorable interest in the existing county-based system of indigent defense funding. Quitman County complains that the county-based system results in an inadequate and unconstitutional system of indigent defense. Quitman County is particularly interested in this funding scheme because it, obviously, is a county, and, as such, is the entity which our Legislature has required to provide indigent defense funding. Furthermore, Quitman County has experienced an adverse effect from the State's alleged failure to provide adequate funding for indigent defendants. Quitman County asserts that the county-based system has had devastating consequences for the county's budget, for the taxpayers, for the criminal justice system, and for the indigent defendants. For these reasons, Quitman County has standing to bring this action against the State.

## II. WHETHER THE COUNTY'S COMPLAINT FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

¶14. The second issue before this Court is whether the circuit court erred in finding that the County stated in Count I of its complaint a claim upon which relief may be granted. We stress that the sole question before us is whether the County can prove no set of facts which would entitle it to the relief requested. Our analysis of this issue requires no conclusion as to the constitutional validity of the funding scheme enacted by the Legislature. Though members of this Court have heretofore expressed dissatisfaction with that scheme and even gone so far as to question its constitutional validity, that question is not presently before us, and this opinion should not be construed as stating a position on that issue.

¶15. Again, the County alleged in its complaint that by requiring counties to fund the representation of indigent defendants, the State has violated its duty under Art. 3, § 26 of the Mississippi Constitution to provide effective assistance of counsel to indigent criminal defendants. The County claims that Miss. Code Ann. § 25-32-7 and § 99-15-17 are unconstitutional because they impose fiscal obligations to provide defense counsel on the counties in violation of the State's duty under Art. 3, § 26. In its opinion, the circuit court repeatedly refers to the State's compliance with the Sixth Amendment to the United States Constitution as well as Art. 3, § 26 of the Mississippi Constitution. The County's complaint, however, brings this action only under Art. 3, § 26 of the Mississippi Constitution.

¶16. A motion to dismiss under M.R.C.P. 12(b)(6) raises an issue of law, which is reviewed de novo. *Lowe v. Lowndes County Bldg. Inspection Dep't*, 760 So. 2d 711, 712 (Miss. 2000); *Tucker v. Hinds County*, 558 So. 2d 869, 872 (Miss. 1990). Taking the well-pleaded factual allegations of the complaint as true, the motion should not be granted unless it appears beyond any reasonable doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Moore ex rel. City of Aberdeen v. Byars*, 757 So. 2d 243, 246 (Miss. 2000).

¶17. Essentially, the State makes two arguments regarding the County's alleged failure to state a claim. First, the State argues that the County's allegations, even if taken as true, are insufficient to overcome the applicable presumption of constitutionality afforded the statutes at issue. Second, the State argues that the financing of public defenders is a legislative matter for which the courts can provide no remedy. We will address these arguments in turn. It is well settled that a court may strike down an act of the legislature "only where it appears beyond a reasonable doubt" that the statute violates the clear language of the constitution. *James v. State*, 731 So. 2d 1135, 1136 (Miss. 1999). A party challenging the statute must be able to "overcome the strong presumption" that the act is constitutional. *Cities of Oxford, Carthage, Starkville, & Tupelo v. Northeast Elec. Power Ass'n*, 704 So. 2d 59, 65 (Miss. 1997).

¶18. Art. 3, § 26 of the Mississippi Constitution states, in pertinent part:

> In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, to demand the nature and cause of the accusation, to be confronted by the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in all prosecutions by indictment or information, a speedy and public trial by an impartial jury of the county where the offense was committed. . . .

This provision has been interpreted to create a duty on the part of the State to provide effective assistance of counsel to indigent defendants. *Mease v. State*, 583 So. 2d 1283 (Miss. 1991); *Wilson v. State*, 574 So. 2d 1338 (Miss. 1990); *Conn v. State*, 125 Miss. 488, 170 So. 2d 20 (1964) (relying on *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed. 2d 799 (1963)).

¶19. The State legislatively requires counties to fund the representation of indigent criminal defendants. Section 25-32-7 provides:

> The public defender shall be provided with office space, secretarial assistance, and all reasonable expenses of operating the office, at least equal to or more than the county prosecuting attorney, or the district attorney if the public defender represents the entire circuit court district. The compensation and expenses of the public defender's office shall be paid by the county or counties if two (2) or more counties are acting jointly. The funds shall be paid upon allowance by the board of supervisors by order spread upon the minutes of the board.

¶20. Also, § 99-15-17 provides, in pertinent part, "The fees and expenses [of counsel for indigents] as allowed by the appropriate judge shall be paid by the county treasurer out of the general fund of the county in which the prosecution was commenced."

¶21. The cases brought before this Court to date involved the issue of the State's compliance with its duty to provide representation for indigent criminal defendants in the context of the limits placed on attorney's fees in individual cases by § 99-15-17. In each of those cases, the Court upheld the constitutional validity

of § 99-15-17, deferring to the Legislature's right to expend public funds. *See Mease v. State*, 583 So. 2d 1283 (Miss. 1991); *Wilson v. State*, 574 So. 2d 1338 (Miss. 1990); *Pruett v. State*, 574 So. 2d 1342 (Miss. 1990). The case at hand is different in that it involves the issue of the State's compliance with its duty to provide representation for indigent criminal defendants in the context of a system of providing indigent defense. Nevertheless, in two of those cases, members of the Court expressed reservations regarding the constitutional validity of the county-based system of indigent representation. In *Wilson* this Court stated:

> Nothing in this opinion is meant to interfere with the right of the Legislature to order the expenditure of public funds but in light of this opinion, the Legislature may wish to reconsider the funding of attorney representation of indigents. In fact, we would encourage the Legislature to review the system and provide funds for the representation of indigent defendants in capital cases from State funds rather than county funds. Since the State funds the prosecution in these cases, why not the defense?

*Wilson*, 574 So. 2d at 1341. Also, in *Mease*, Justice Prather, specially concurring, stated, "As in *Wilson*, I suggest the Legislature address the problem of indigent representation on a statewide basis, rather than thrust the burden on financially-strapped counties." *Mease,* 583 So. 2d at 1285.

¶22. The County alleges that § 99-15-17 and § 25-32-7 unconstitutionally remove the burden of the State to provide representation for indigent defendants and place it on the County. The County does not argue that it is per se unconstitutional for the Legislature to require the County to fund the representation of indigent defendants. In fact, the County conceded during oral argument that the Legislature has the authority to place the burden of such funding on the County. The County's argument lies in the allegation that these statutes do not meet the requirements of Art. 3, § 26 because they result, in Quitman County, in widespread ineffective assistance of counsel due to the fact that the County cannot afford to discharge its burden of providing funding for indigent defendants in a constitutional manner. The State argues that because the Legislature has the authority to direct counties, as subdivisions and agencies of the State, to assist in providing representation for indigent defendants, the County's complaint fails to allege a palpable conflict between the actions of the Legislature and the Constitution and, as such, must be dismissed for failure to state a claim.

¶23. The State relies on Art. 14, § 261, which provides that "[t]he expenses of criminal prosecutions shall be borne by the county in which such prosecution shall be begun...." The State's reliance on Art. 14, § 261 is misplaced. Again, the County's allegations do not rest on the assertion that the State is constitutionally prohibited from requiring the County to provide funding for indigent defense. Rather, the County's allegations rest on the assertion that the State's requiring the County to provide funding has resulted in chronic underfunding and systemic ineffective assistance of counsel in Quitman County. It is not the funding which the County argues the State has unconstitutionally shifted to the counties, but the ultimate obligation of indigent defense. The breach of duty, alleges the County, occurred not when the State required the counties to fund indigent criminal defenses, but when that requirement resulted in systemic ineffective assistance of counsel that has gone unchecked and unremedied by the State. It is the State's failure to remedy the alleged systemic ineffective assistance of counsel that is the crux of the County's complaint.

¶24. The County states that at trial it is prepared to show the cost of an effective system of indigent criminal defense, the County's inability to fund such a system, and the failure of the existing system to provide indigent defendants in Quitman County with the tools of an adequate defense. The County's complaint includes the following well-pled facts:

• The State's refusal to provide funds and its imposition of the financial burden on resource-starved counties has had dire consequences for the provision of indigent defense services in Mississippi. Studies prepared for a committee of the Mississippi Bar Association in the 1990s found:

- Funding for indigent defense is totally inadequate (amounting to $3.24 per capita, far less than any other state);

- The lack of adequate resources for indigent defense services results in poor quality services and representation that falls beneath the minimum standards of representation required by the Mississippi Constitution; and

- There is not statewide oversight of indigent defense, which leads to a hodgepodge, county-by-county approach to defense services.

• The State's lack of involvement in the provision of indigent defense and inadequate resources available to such indigent defense means that constitutional requirements for the effective assistance of counsel are not met. Studies conducted for the Mississippi Bar Associate found:

Resources are not sufficient to provide adequate representation even in felony cases, particularly in those counties using the contract public defender system. Every aspect of defense representation is compromised. Specifically, there is very little: early representation provided, investigation conducted, attorney/client contact, or use of experts. There is a low trial rate in felony and misdemeanor cases. The requirement for contract defenders and assigned counsel to handle their own appeals, often with no additional compensation, creates a disincentive for taking cases to trial. Case preparation is often late, and frequently preliminary hearings are waived and defendants are held in jail three to six months without counsel until arraignment in circuit court. The overall situation has led to an insufficient number of qualified attorneys willing to take court appointments in indigent cases or to seek contract public defender positions.

• The defendants have imposed enormous and unpredictable indigent defense costs on Quitman County and its taxpayers. As a result, financial resources available to fund schools, hospitals, local law enforcement and the traditional health, safety and welfare obligations of county government have been substantially reduced.

Defendants' imposition of indigent defense costs on counties has disproportionately increased tax burdens on counties with small populations but significant crime problems - often from non-residents - such as Quitman County, and has led to unequal tax burdens.

Chronic underfunding of indigent defense has resulted in constitutional requirements for effective assistance of counsel often not being met and has adversely affected the administration of justice in Mississippi.

¶25. We conclude that the County has pleaded facts which, when taken as true as they must be on a Rule 12(b)(6) motion, are sufficient to demonstrate that by requiring Quitman County to fund indigent criminal defense in that County, the State has breached its constitutional duty to provide indigent defendants with effective assistance of counsel.

¶26. Additionally, the State argues that the financing of public defenders is a legislative matter for which the

courts can provide no remedy. The State asserts that because there exists no constitutional restriction on the ability of the State to allocate the costs of indigent defense between the State and counties, the system of indigent defense is a public policy decision solely within the purview of the Legislature.

¶27. This Court has recognized that in most instances the authority to control the expenditure of funds for the purpose of indigent defense is a legislative rather than a judicial matter. *See Wilson v. State*, 574 So. 2d 1338, 1340 (Miss. 1990); *Bd. of Supervisors v. Bailey*, 236 So. 2d 420, 423 (Miss. 1971). Though questions of this nature are traditionally legislative affairs, this Court has recognized that where the Legislature fails to act, the courts have the authority and the duty to intervene. This Court addressed the Legislature's failure to allocate sufficient funds for the courts to operate in *Hosford v. State*, 525 So. 2d 789 (Miss. 1988). In *Hosford*, poor courtroom conditions including loud noises and poor temperature control led the circuit court to petition this Court for assistance so that the county courthouse would have adequate operating facilities. We noted that while the three branches of government should remain separate and co-equal, where the Legislature, in its allocation of funds to the judicial branch, "fails to fulfill a constitutional obligation to enable the judicial branch to operate independently and effectively, then it has violated its Constitutional mandate, and the Judicial branch has the authority to see that courts do not atrophy."*Id*. at 798. The Court recognized that while the Legislature has the authority "to furnish what funds and facilities it deems proper," the courts may act in cases of necessity where the Legislature fails to furnish the essentials required for the operation of an independent and effective court. *Id.* Certainly, if adequate facilities are essential to the administration of justice, so is effective representation.

¶28. In *Jackson v. State*, 732 So. 2d 187, 190 (Miss. 1999), this Court recognized its authority to act in cases of necessity. In *Jackson*, this Court held that the indigent petitioner was entitled to appointed and compensated counsel to represent him in his post-conviction efforts. We stated, with regard to expenses in post-conviction proceedings, "The Legislature has been aware of this acute problem. . . . It is strongly urged that the Legislature proceed toward a solution to this serious problem by enacting the program utilized in Virginia or some other system. We can no longer sit idly by." *Id*. at 191.

¶29. In *Wilson v. State*, 574 So. 2d 1338, 1340 (Miss. 1990), the Court addressed the issue of indigent defense attorney compensation under § 99-15-17 and stated, "[w]hile we do have the authority to override the Legislature in cases of absolute necessity, we have previously held that the issue of compensation for an attorney appointed to defend an accused in a criminal case is a legislative matter rather than a judicial matter." *See also Bd. of Supervisors v. Bailey*, 236 So.2d 420 (Miss. 1970) (where the Court first indicated that the question of compensation was a legislative matter as opposed to a judicial matter).

¶30. The question raised by the County's allegations is whether, assuming the State has failed in its duty to provide effective indigent defense, the county-based system has resulted in the inability of the judiciary to operate in an independent and effective manner to the extent that this Court must, of necessity, interfere in this traditionally legislative function and order the Legislature to establish a statewide, state-funded system of indigent criminal defense. Again, taking as true the well-pled allegations of the County's complaint, such systemic constitutional deficiencies would entitle the County to relief.

## CONCLUSION

¶31. Quitman County has standing to bring this action against the State. The County has a colorable interest in the State's compliance with its duty to provide effective assistance of counsel to indigent defendants under Art. 3, § 26. Furthermore, the injuries alleged in its complaint by Quitman County to itself and its taxpayers

are sufficient evidence of an adverse effect from the State's alleged lack of compliance with Art. 3, § 26 to survive a Rule12(b)(6) motion. Whether Quitman County can prove such allegations at a full trial on the merits will be determined upon remand.

¶32. The circuit court correctly found that the County stated a claim upon which relief may be granted. Therefore, the order denying the State's motion to dismiss Count I of the Complaint is affirmed, and as such this case is remanded to the circuit court for further proceedings.

¶33. **AFFIRMED AND REMANDED.**

> **BANKS AND McRAE, P.JJ., COBB AND DIAZ, JJ., CONCUR. PITTMAN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, J. EASLEY, J., JOINS IN PART. MILLS, J., NOT PARTICIPATING.**

> **PITTMAN, CHIEF JUSTICE, DISSENTING:**

¶34. This case is before us on interlocutory appeal from the Quitman County Circuit Court. Judge Elzy J. Smith granted the State's M.R.C.P. 12(b)(6) motion to dismiss Count Two of Quitman County's complaint, but denied the motion with respect to Count One of the complaint. Count One alleges the State has breached its duty under Article 3, Section 26 of the Mississippi Constitution to provide and fund adequate representation for indigent criminal defendants. The County claims this breach is occurring because Miss. Code Ann. § 25-32-7 (1999) and § 99-15-17 (2000) have shifted the burden of paying for indigent defendant's counsel from the State to the County and the County does not adequately pay for counsel. The County asks that these statutes be declared unconstitutional and that an injunction issue to require the State to provide a statewide public defender system. It asserts that this lack of funding for indigent defense counsel is causing systemic ineffective assistance of counsel within its borders.

¶35. This Court has previously held: "[I]neffective assistance of counsel is a matter that is better decided on a case by case basis." *Wilson v. State*, 574 So. 2d 1338, 1341 (Miss. 1990). *See also State ex rel. Stephan v. Smith*, 747 P.2d 816, 831 (Kan.1987). There are no other cases where anyone other than the defendant has been allowed to raise this claim. *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) ("No court . . . has ever held that the Sixth Amendment protects the rights of anyone other than criminal defendants."). *Accord, Kinoy v. Mitchell*, 851 F.2d 591, 594 (2d Cir. 1988).

¶36. Quitman County brings this claim of ineffective assistance of counsel on behalf of its taxpayers, not the indigent defendants. The County does not propose to prove how its public defenders have been ineffective in specific cases. Rather, the County is concerned with the financial burdens the costs of indigent defense is placing upon its tax revenues. To allow Quitman County to raise an ineffective assistance of counsel claim here would unnecessarily broaden jurisprudence on standing and where it leads, this Court cannot now know. Claims of ineffective assistance of counsel are, of necessity, fact-specific as what constitutes ineffective assistance in one case may not be in another. It would be premature to say that all indigent defendants awaiting trial in Quitman County have received ineffective assistance of counsel since they have not had an opportunity to have their guilt determined at trial and their counsel's assistance examined in light of those proceedings.

¶37. Furthermore, it is noteworthy that Quitman County's problems giving indigents effective assistance of counsel were created by its own failure to act. The Quitman County Board of Supervisors is bringing this

suit because it does not believe it pays its own public defenders adequately. To allow the County to have standing due to its partially self-imposed problems would be to open the door to a floodgate of lawsuits on many subject matters where a County Board of Supervisors disagrees with state law. Therefore, I do not agree that the County has standing to raise indigent defendants' claims of ineffective assistance of counsel.

¶38. The majority also finds Quitman County has stated a claim for which relief may be granted. Quitman County asks for the following relief:

> 1) declaratory judgment that:
>
> A) the State has breached its duty to afford indigent defendants effective assistance of counsel,
>
> B) the statutes placing the funding of indigent defense on the county are null and void,
>
> C) the State is required to establish a statewide, state-funded public defenders office for all indigent defendants
>
> 2) preliminary and permanent injunctions that:
>
> A) direct the State to establish a statewide public defender's office
>
> B) if no such office is established, then to prohibit the State from funding the prosecution of criminal defendants.

Where will the counties and a majority of this Court strike next? State-aid roads, law enforcement, and the like? These requirements are imposed by state statute. Will we next be called on to judicially weigh their desirability or their proper funding?

¶39. This Court can strike down a statute only where it appears beyond all reasonable doubt the statute violates the clear language of the Constitution. *James v. State*, 731 So. 2d 1135, 1136 (Miss. 1999). There is a strong presumption a statute is constitutional which the party challenging the statute must overcome. *Cities of Oxford, Carthage, Starkville & Tupelo v. Northeast Miss. Elec. Power Ass'n.*, 704 So. 2d 59, 65 (Miss. 1997). Any doubts concerning the constitutionality of a statute must be resolved in favor of the validity of the statute. *Id*. It is clear that the statutes placing the burden of funding indigent defense counsel on the counties as arms of the State are supported by Article 14, Section 261 of our Constitution. Section 261 reads: "The expenses of criminal prosecution shall be borne by the county in which prosecution shall be begun. . . ." This Court has held that compensation for public defenders are part of the expenses of a criminal prosecution. *Bd. of Supervisors v. Bailey*, 236 So. 2d 420 (Miss. 1970). As there is no disagreement between the Constitution and the statutes in question, then there is an absolute presumption for the statutes' validity and no cause to hold the statutes unconstitutional.

¶40. This Court has addressed claims similar to the one raised here in *Wilson* and *Pruett v. State*, 574 So.2d 1342 (Miss. 1990) (controlled by *Wilson*). In *Wilson*, an indigent defendant raised the issue that his counsel could not render effective assistance to him, or anyone, due to the compensation constraints of Miss. Code Ann. § 99-15-17, a section which Quitman County seeks to have declared unconstitutional. This Court refused to find this section unconstitutional in light of an ineffective assistance of counsel claim, but chose to construe it in a constitutional manner which allowed for reimbursement for actual costs of defense. The Court went on further to explain:

> While we do have the authority to override the Legislature in cases of absolute necessity, we have previously held that the issue of compensation for an attorney appointed to defend an accused in a criminal case is a legislative matter rather than a judicial matter.

> Although we recognize our inherent authority to provide counsel for indigents, we refused to interfere with the Legislature's right to expend public funds. The Legislature is better equipped to handle this matter. . . .

*Wilson*, 574 So. 2d at 1340. It is clear, then, that the statute in question is constitutional-and has been held so by this Court-and relief cannot be had in the form of an injunction which strikes it down.

¶41. Article 1, Sections 1 and 2 also indicate that it is outside the Court's power to assume control of the establishment and funding of a public defender's office from the Legislature. Article 1, Section 2 specifically provides:

> No person or collection of persons, being one or belonging to one of these departments [the three branches of government], shall exercise any power properly belonging to either of the others. . . .

Miss. Const. art. 1, § 2. In only the rarest of circumstances should this Court interfere in a duty it has held to belong to the Legislature. *See Jackson v. State*, 732 So. 2d 187, 190 (Miss. 1999); *Wilson*, 574 So. 2d at 1340; *Hosford v. State*, 525 So. 2d 789, 797, 798 (Miss. 1988); *Bailey*, 236 So. 2d at 422. Quitman County is ultimately asking this Court to force the Legislature to create a statewide public defender's office and fund it. I agree that it would be wise for the Legislature to create and fund a statewide public defender's office. However, the Legislature has attempted to solve the problem of indigent defense in other ways.[2] By its actions the Legislature has shown that it is not blind to the plight of Quitman County. It is the Legislature which holds the key to solving these problems, not this Court by impressive and excessive exercise of judicial authority. Therefore, I dissent.

**WALLER, J., JOINS THIS OPINION. EASLEY, J., JOINS IN PART.**

1. There are pending three similar suits have been held in abeyance pending the outcome of this appeal-*Jefferson County v. State*, Cause No. 99-0169, pending in the Circuit Court of Jefferson County; *Noxubee County v. State*, Cause No. 99-0136, pending in the Circuit Court of Noxubee County; and *Van Slyke v. State*, Cause No. 00-0013-GN-D, pending in the Chancery Court of Forrest County.

2. Miss. Code Ann. §§ 99-18-1 to -19 (2000) (Mississippi Capital Defense Litigation Act); *id.* §§ 99-39-101 to -119 (2000 & Supp. 2001) (Mississippi Capital Post-Conviction Counsel Act); *id.* § 25-32-71 (Supp. 2001) (Mississippi Public Defender Task Force).