BANKS, Justice,
for the Court:
I.
The present appeal asks that the Court reverse a judgment of the Desoto County Chancery Court declaring the notice provisions of the Rules and Regulations of the Public Service Commission (PSC) and applicable parts of the Mississippi Code unconstitutional for lack of procedural due process to rate payers. Finding a want of jurisdiction in the chancery court, we reverse.
II.
North Mississippi Utility Company (NMUC) brings this appeal. These proceedings began when the NMUC filed “Notices of Intent to Increase Rates” on April 20, 1989.[1] After filing, the PSC reviewed the notice and entered a “Suspension Order” invoking Miss.Code Ann. § 77-3-39(2) (1991). The executive secretary of the PSC caused a “Notice” of the pendency of proceedings to change the rates to be published in the Clarion-Ledger on May 17, 1989. Pursuant to PSC rules, an announcement concerning the rate increase was also mailed with monthly bills by NUMC over a ten day period ending on or about May 26. Beginning in early June, numerous telephone calls and letters of protest from customers objecting to the increase were received by the Commission. No one intervened or sought intervention pursuant to the PSC rules.
In due course, a prehearing conference was scheduled for July 13, 1989. Stipulations by the PSC and NMUC were filed August 1, 1989 and the Commission entered its “Order. Approving Stipulations” on September 7, 1989.
A protest letter and a petition objecting to the rate increase was filed with the PSC on September 27, 1989. On October 17, in response to the numerous complaints received, the PSC issued an “Amended Order Setting Rates and Charges.” Six days later, it issued an “Order Approving Compliance Tariff.” Appellees here, affected residents, filed notice of appeal to the Chancery Court, pursuant to the provisions of Miss.Code Ann. § 77-3-67 (1991). That court, after review of the record, reversed the decision of the Commission on the ground that the notice provisions of the Rules and the Code were unconstitutional. The court found that the residents were users of goods and services provided by the NMUC and if they fail to pay for these they run the risk of being “cut off.” Thus, the court concluded that these services were property interests. It determined that the Notice listed in the Clarion-Ledger was insufficient, since most of the residents in the communities do not receive the Jackson-based paper and publication in a North Mississippi paper would have been more adequate. The court went on to hold that actual service by mail was the most *220 efficient. It concluded that Miss.Code Ann. §§ 77-3-37, -39, -47 were unconstitutional for want of procedural due process and the causes should be reversed and remanded for proper notice and disposition.
III.
The dispute presently before the Court involves yet another attack on the Public Utilities Act embodied in Miss.Code Ann. § 77-3-1 (1991) et seq. NMUC and the PSC assert that the lower court erred in determining that the notice provisions of the Act and the Public Utility Rules of Practice and Procedure (Rules) were unconstitutional. They, instead, argue the converse and contend that the provisions for notice are in keeping with the due process guarantees of the Fourteenth Amendment to the United States Constitution,[2] as well as Article 3, section 14 of the Mississippi Constitution.[3]
The customers support affirmance of the disposition below. In addition to the main thrust of their argument which is a lack of procedural due process, they contend that (1) the PSC’s findings were not based on substantial evidence; (2) the Commission erred in allowing NMUC to bill at the new rates prior to the effective date of the rates; (3) NMUC failed to comply with Rule 6(P)(3) which requires that all data requests and responses thereto contain a certificate of service certifying compliance with the rule; (4) the Commission erred in finding that the stipulations were fair, reasonable and in the public interest.
IV.
Before addressing the general constitutional attack lodged against the notice provisions of the Act and Rules, the Court must first concern itself with the procedure followed by customers and whether or not they are properly before this Court. As noted by the NMUC, the customers failed to avail themselves of their rights to intervene in the cases below. Their failure to do so is fatal to their contentions and a disposition favorable to them on appeal. In understanding why, the Court must of necessity look to the notice provisions found in the Act and the Rules and to the prerequisites to the status of “party” in the proceedings.
First, when a public utility seeks to change the rates it charges it must adhere to the criteria set forth in section 77-3-37 of the Code. That section provides that public utilities “seeking a change in any rate or rates shall file with the secretary of the commission and the executive director of the public utilities staff a notice of intent to change rates.” Miss.Code Ann. § 77-3-37 (1991). Routine changes that do not involve substantial revenue adjustment may go into effect after thirty days notice to the Commission. Id. “In all other cases, the notice of intent shall contain a statement of the changes proposed to be made in the rates then in force, the new level of revenues sought, the reasons for the proposed changes and the date proposed for such changes to become effective, which date shall not be less than thirty (30) days after the date of filing.” Id.
The statute provides further that within five days after the notice of intent has been filed, the utility “shall serve a copy of the notice of intent ... on all parties of record in its last proceeding in which a major change in rates was sought_” Miss. Code Ann. § 77-3-37(6) (1991). It is then incumbent upon the “public utilities staff and all intervenors or protestants” to file all information in support of their position regarding the proposed changes within sixty days from the filing of the notice of intent. Miss.Code Ann § 77-3-37(7) (1991).
Hearings on proposed changes are regulated by section 77-3-39 of the Code. There it is set forth,
*221 [wjhenever there is filed with the commission by any public utility any notice of intent to change rates pursuant to the provisions of Section 77-3-37, the commission, if it so orders within thirty (30) days after the date such notice of intent is filed, shall hold a hearing to determine the reasonableness and lawfulness of such rate change. The commission shall hold such hearing in every case in which the change in rates constitutes a major change in rates, as defined in Section 77-3-37(10). An abbreviated proceeding may satisfy this requirement if the commission’s order is supported by the data, documentation and exhibits on file in the proceeding.
(2) Pending such hearing and the decision thereon, the commission may, at any time before they become effective, suspend the operation of such rate or rates, but not for a period longer than one hundred twenty (120) days beyond the date of the filing of the notice of intent, except as provided in subsection (11) of this section.
(3) If the commission enters upon such hearing, the commission shall direct all interested parties of record served with the notice of intent to change rates and the public utilities staff to appear before it, or a hearing examiner designated by it, for a prehearing conference pursuant to the provisions of Section 77-3-47, and the commission shall publish notice of said hearing as therein provided.
* * * * *
(11) [Tjhe 120-day period provided for in subsections (2) and (6) of this section may be enlarged by the commission, in order to postpone the hearing on the notice of intent, decision or final order in any subsequent rate case filed by the same utility, until a final order has been rendered with respect to the prior pending change in rates.
Miss.Code Ann. § 77-3-39 (1991) (emphasis added). Capsulizing this section, hearings are mandated where the proposed change represents a major change in rates. Major change is an increase in rates which would enlarge annual revenues of the filing utility the greater of $100,000.00 or a change in the rate design which has a “significant impact on a class or classes of rate-payers.” Miss.Code Ann. § 77-3-37(8) (1991).
Notice of such hearings “shall be given the persons interested therein by mailing such notice to each public utility which may be affected by any order resulting therefrom and by publication in a newspaper of general circulation published in Jackson, Mississippi.” Miss.Code Ann. § 77-3-47 (1991); Miss.Pub.Ser.Com.R. 8(b) (emphasis added). “Interested persons” within the meaning of the statute, include those
presently holding a certificate authorizing it to provide services of the same type as that authorized, or proposed to be authorized, for the filing utility and (b) which presently holds a certificate for a service area, any part of which lies within one mile of the area certificated, or proposed to be certificated to the filing utility.
⅝ * * * * ¾:
(4)In addition to the above, in the context of any rate proceeding filed under the provisions of Rule 9A (Notice Filings) the term “interested person” shall be defined to include any person who was a party of record in the last proceeding in which a major change in rates was sought by the filing utility[4].
Miss.Pub.Ser.Com.R. 2(1). Conspicuous by absence are references to customers or rate-payers.
However, Rule 9(B)(1) provides for notice to customers of the filing utility. Pursuant to this rule, the filing utility “shall provide each of its affected customers with written notice summarizing the proposed changes in rates” on or before forty-five days following the filing date. Id. The rules define a party as
(1) the filing utility. (2) The Public Utilities Staff through its general counsel. (3) A party pursuant to law or Commission regulation by the granting of, or request for, intervention. Provided however that a person specifically denied *222 a right of intervention by Commission order shall not thereafter be considered a party or (4) Made a party by service of process upon them.
Miss.Pub.Ser.Com. 2(A) (emphasis added).
Intervention is governed by Rule 6(J). There it is written,
(1) Allowed. In any formal proceeding, the Commission in its discretion, may permit any corporation, association, body politic or person having an interest in the proceeding to intervene and be heard, after opportunity has been given to the party or parties to such proceeding to be heard on such intervention. Leave thus granted shall entitle the intervenor to notice of and to appear at the taking of the testimony, and subject to such conditions as may be prescribed by the Commission in each case, to produce and cross examine witnesses, and to file briefs and be heard on the argument.
Miss.Pub.Ser.Com.R. 6(J)(1). The time allotted for filing such petitions is
on or before twenty (20) days from the date the proposed intervenor first receives actual or constructive notice of such proceeding. Provided, however, in no event shall a petition to intervene be filed less than five (5) days prior to the date proposed for any action or public hearing in the proceeding. Provided further should any hearing or action be proposed upon less than twenty (20) days notice then the petition to intervene shall be filed not less than five (5) days prior to the date proposed for such hearing or action. Petitions to intervene not timely filed under this rule shall be allowed in the discretion of the Commission and only upon good cause shown.
Miss.Pub.Ser.Comm.R. 6(J)(3).
V.
Appellees here never sought intervention. Having failed to intervene they never became parties. They, therefore, were in no position to appeal from the final order of the PSC. The statute lodging appellate authority in the chancery court provides that “any party aggrieved by any final finding” of the PSC shall have the right of appeal to that court. Miss.Code Ann. § 77-3-67 (1991). We have distinguished statutes allowing a right of appeal to aggrieved “parties” from those allowing appeal to aggrieved “persons” {see e.g., Miss. Code Ann. § 11-51-75 (1991) providing for appeals from decisions of boards of supervisors or municipal authorities). We have held that “statutes which allow a ‘party’ to appeal, as a rule, limit the right to those who were original parties to the action or proceeding.” Ridgway v. Scott, Guardian, 237 Miss. 400, 114 So.2d 844 (1959). Appellees, then, never acquired standing to take an appeal. Thus, the chancery court had no jurisdiction of this matter and its, apparently routine, finding to the contrary is manifest error. As the chancery court lacked jurisdiction with respect to the order of the PSC, it follows that this court lacks jurisdiction in that regard. Bickham v. Department of Mental Health, 592 So.2d 96 (Miss.1991); Moore v. Sanders, 569 So.2d 1148 (Miss.1990). This is a fact that we must note and be guided by even where, as here, the parties fail to call it to our attention. May v. VFW, 577 So.2d 372 (Miss.1991). Accordingly, the order of the chancery court must be vacated.
VI.
For the foregoing reasons the judgment of the chancery court is hereby vacated and the proceedings dismissed for want of jurisdiction.
LOWER COURT’S DECISION VACATED AND APPEAL DISMISSED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
DAN M. LEE, P.J., and McRAE, J., dissent.

. NMUC sought an increase in rates for water and sewer services it provided to the residents of North Mississippi. The causes were consolidated on appeal.

. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const, amend. XIV. (emphasis added)

. No person shall be deprived of life, liberty, or property except by due process of law. Miss. Const, art. Ill, § 14.

. See also, Miss.Code Ann. § 77-3-37(6) (1991).