IN THE SUPREME COURT OF MISSISSIPPI

NO. 2008-CC-01618-SCT

*HAROLD L. GREEN*

*v.*

*CLEARY WATER, SEWER & FIRE DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/03/2008 |
| TRIAL JUDGE: | HON. DAN H. FAIRLY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | HAROLD L. GREEN (PRO SE) |
| ATTORNEY FOR APPELLEE: | JAMES A. BOBO |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 09/17/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., RANDOLPH AND PIERCE, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1. This is an appeal from decisions by the Mississippi Public Service Commission ("Commission") denying a motion to amend, and then dismissing the complaint and the Rankin County Chancery Court's order affirming the Commission. The complaint challenged the Commission's grant of a Supplemental Certificate of Public Convenience and Necessity ("Supplemental CCN") to the Cleary Water, Sewer and Fire District ("Cleary") in September 2000. This Court dealt with related matters in *Green v. Cleary Water, Sewer & Fire District*, 910 So. 2d 1022 (Miss. 2005) ("*Green I*"), *cert. denied*, 547 U.S. 1098, 126 S. Ct. 1883, 164 L. Ed. 2d 568 (2006).

**FACTS AND PROCEDURAL HISTORY**

¶2.　The Cleary Heights Water and Sewer District ("Cleary Heights") was created in 1980. That same year, the Commission issued Cleary Heights a Certificate of Convenience and Necessity ("CCN") to provide sewer services in a specified area in the Cleary Heights community in southwest Rankin County. In 1986, Cleary Heights combined operations with the Cleary Fire Protection District, and was renamed Cleary Water, Sewer and Fire District. Under the CCNs in effect at that time, Cleary continued to operate a sewer for the originally-specified area, but provided fire protection and potable water service to a larger area. Harold Green ("Green") resides in the larger area which was provided water service and fire protection, but was not served by Cleary's centralized sewer system. Residents of that area, including more than 700 households and other customers, use individual on-site wastewater disposal systems ("IOWDS").

¶3.　In 2000, Cleary sought to increase the sewer-service area so that it would be identical to the area being provided water service and fire protection. Cleary applied to the Commission for a supplemental CCN to enlarge the sewer-service area. Prior to the approval of the supplemental CCN, Cleary adopted a new Sanitary Sewer Use Ordinance, which required all property owners to connect to "a public sanitary sewer" if access was available, or later became available, within one hundred feet of the property. Anyone installing a new IOWDS would have to have it inspected and approved by the district. Residents with existing IOWDSs would have to operate them in a sanitary manner.

¶4.　Cleary asserted in its application for the supplemental CCN that it was "ready, willing and able to construct, operate and maintain a sewer system so as to render sewer service to

2

the public for compensation in the additional area proposed to be served." In September 2000, after notice and a hearing, the Commission granted the supplemental CCN. The Commission found that (1) Cleary was authorized and permitted to "construct, operate and maintain a sewer system in the additional area," (2) all persons requesting sewer service in the new area would be served at the previously-approved rates, and (3) statutory notice requirements had been met and "[n]o protest or objection [had] been filed." The Commission also stated in its order, "Construction of the proposed sewer system shall be commenced within six (6) months from the effective date of this Order or this Certificate *may* be cancelled." (Emphasis added.)

¶5.    In June 2001, Cleary adopted a Decentralized Wastewater Use Ordinance ("Ordinance"). *Green I*, 910 So. 2d at 1024-25. With some exceptions, the ordinance essentially codified the rules that had existed prior to the grant of the supplemental CCN. The ordinance did not call for a new sewer system to be constructed, nor did it provide for an extension of the existing central sewer to the residences in the new area. The ordinance required IOWDS owners in the new area to have them inspected within one year, and annually thereafter. *Id.* at 1025. The inspection results were to be sent to Cleary to prove that the system was working properly. *Id.* Owners of properly-functioning IOWDSs were not otherwise affected. Owners unable to show a properly-working IOWDS would be required to install a new system. *Id.* Cleary was to accept ownership of the new IOWDS and maintain them for the property owner for a monthly fee to be added to the water bill. *Id.* Prior to adopting the ordinance, Cleary published a Notice of Public Hearing concerning the

3

proposal. *Id.* After receiving no objections at the public hearing, Cleary adopted the ordinance. *Id.*

¶6. In *Green I*, Green and more than one hundred other residents of the affected area challenged Cleary's authority to enact the ordinance. *Id.* This Court held that Cleary had such authority under its general police powers. *Id.* at 1031. However, the Court declined to affirm summary judgment in favor of Cleary, finding that genuine issues of material fact existed as to whether the ordinance conflicted with Mississippi Department of Health ("MDH") regulations and whether the ordinance constituted a taking. *Id.* The taking issue became moot when Cleary amended the ordinance, removing the clause providing for Cleary to take ownership of the IOWDSs. The record does not reflect how the MDH issue was resolved.

¶7. In August 2004, while *Green I* was still in litigation,[1] Green filed a separate complaint, in which he requested that the Commission vacate its order granting the supplemental CCN. He argued that the Commission had reserved its right to cancel the supplemental CCN if sewer construction did not begin within six months, and asserted that nearly forty-eight months had passed without commencement of construction. He asserted that this failure proved that Cleary had made "false statements" in its bid to gain approval of the supplemental CCN.

---

[1] Just before this filing, the Court of Appeals had held for Cleary, affirming its motion for summary judgment. *Green v. Cleary Water, Sewer & Fire Dist.*, 910 So. 2d 1, 5-6 (Miss. Ct. App. 2004), *cert. granted*, 892 So. 2d 824 (Miss. 2005).

¶8. In December 2004, Green moved to amend his complaint to assert that notice of the Commission's hearing had not been proper or adequate. Green argued that the only notice given was for the enlargement of the sewer-service area, without notice of intention to set up a decentralized system. Green claimed that such a system was very rare in Mississippi, and could not have been anticipated by the notice given.

¶9. In February 2005, the Commission denied Green's motion to amend, stating that it had complied with statutory notice requirements by publishing a notice of hearing in a newspaper of general circulation published in Jackson, and a newspaper of general circulation in the county where the certificated area is located. The Commission found that Green was seeking notice beyond that required by statute. *See* Miss. Code Ann. § 77-3-47 (Rev. 2001).

¶10. On April 5, 2005, the Commission dismissed Green's original complaint without a hearing. In its dismissal order, the Commission found that Green's only basis for seeking the cancellation of the supplemental CCN was that construction of a sewer had not begun within six months. The Commission noted that the order granting the supplemental CCN, as with all of its certification orders where timing is not crucial, used permissive language ("Certificate may be cancelled"), not mandatory language. Thus, the Commission was not required to cancel the certificate, but had the option to do so, if warranted or advisable. The Commission also found that the only method for cancellation of a CCN is set forth by statute in Mississippi Code Section 77-3-21 (Rev. 2001). That statutory process requires a finding that the utility is not "rendering reasonably adequate service," which Green did not allege in his complaint. The Commission noted also that, after Green filed his complaint, Cleary filed a "Satisfaction of Complaint," in which it offered to run a sewer line to Green's house.

5

Green did not respond to the offer; thus the Commission found that Green's issue was not inadequacy of service. The Commission cited Rule 11D of the Mississippi Public Service Commission Public Utilities Rules of Practice and Procedure ("the Commission's rules"), which allows it to dismiss a complaint without a hearing, if "not necessary to the public interest or for the protection of substantial rights." The Commission found also that (1) Green had shown no "direct and substantial interest in the subject matter of the complaint," and (2) Cleary had not made any false statements to the Commission.

¶11. On April 21, 2005, Green appealed to the Chancery Court of Rankin County on the dismissal of his complaint, as well as the denial of his motion to amend. Later, Green filed a Motion to Compel Supplementation of the Record, alleging that the supplemental CCN was not lawfully granted because Cleary had not provided all the documents required under the Commission's rules. Up to this point in the proceedings, Green had been represented by counsel. Both Green and his attorney submitted briefs to the chancellor. At oral argument before the chancellor, Green appeared pro se. Although he has continued to proceed pro se, he claims to represent 160 petitioners.[2]

¶12. In its order affirming the Commission, the chancery court analyzed the following issues: (1) Whether the court had jurisdiction over the Commission's decisions in 2000 and 2005, (2) whether Green had standing, (3) whether the Commission had committed reversible

[2]Green closes his pleadings with the phrase, "Respectfully submitted by 160 petitioners." Green obtained 160 signatures on a petition to the Rankin County Board of Supervisors asking it to intervene with the Commission to have the supplemental CCN canceled.

error in dismissing the complaint, and (4) whether the Commission may dismiss a complaint without a hearing.

¶13. The chancellor found that Green was not appealing from the 2000 grant of the supplemental CCN, but even if he was, the court would be without jurisdiction because the appeal was not brought within thirty days of the order. *See* Miss. Code Ann. § 77-3-67(1) (Rev. 2001). The court further held that it was without jurisdiction over the Commission's denial of Green's motion to amend. The court then found jurisdiction over the dismissal, as Green had perfected his appeal within thirty days of the dismissal order.

¶14. On the issue of standing, the chancellor found that Green did have an *interest* in the litigation because a decision rendered by the court could affect his interest, as a property owner, in the certificated area. The court found further that Green had alleged no loss, damage, injury, or harm; nor had he shown any potential threat of any such loss, damage, injury, or harm. The Court rejected Green's argument that he was not given proper notice of Cleary's true intentions, because the issue of the supplemental CCN was expansion of the service area, not what type of service would be provided. The chancellor affirmed the Commission's dismissal of the complaint. Finally, the chancellor held that the Commission was within its authority to dismiss the complaint without a hearing, because such a hearing was not necessary to the public interest or to protect substantial rights.

## ISSUES

¶15. Green raises fourteen issues in his pro se brief to this Court. These can be reduced to four, as follows: (1) whether the 2000 supplemental CCN was improperly granted based on Cleary's and the Commission staff members' false statements, which were known by the

7

Commission to be false; (2) whether the 2000 supplemental CCN was illegally granted because the Commission failed to follow its own rules, requiring certain documents to be filed; (3) whether the Commission was required to cancel the supplemental CCN because of Cleary's failure to construct a sewer system; and (4) whether it was error for the Commission to deny Green's motion to amend and to dismiss his complaint.

¶16.    In fairness to Green, we will address the arguments made by Green's counsel in his chancery court brief.  The issues raised were: (1) whether the dismissal was arbitrary, capricious, and not supported by substantial evidence; (2) whether it was error for the Commission to deny a hearing; (3) whether Green has standing; (4) whether the complaint should have triggered an "adequacy of service" proceeding under Mississippi Code Section 77-3-21 (Rev. 2001); (5) in the alternative, whether the statute is inapplicable; (6) whether administrative decisions based on legal errors are entitled to deference; (7) whether the dismissal violated Green's constitutionally-guaranteed rights; (8) whether the ordinance constituted an improper taking; (9) whether Green was adequately notified of the 2000 grant of supplemental CCN; and (10) if notice was inadequate, making the statutory appeal deadline inapplicable, whether the court had jurisdiction.

¶17.    Green identifies *inter alia* the Commission's 2005 orders as issues for this Court to review.  Although he is in compliance with the requirement that he identify any such issues under the "Statement of Issues" heading of his appeal brief, in his argument of these issues, he cites no authority.  *See* M.R.A.P. 28(a)(3).  Thus, he is in violation of Mississippi Rule of Appellate Procedure 28(a)(6).  Nonetheless, his attorney's chancery-court brief complies with the above rules, and this Court may suspend the requirements of a rule.  *See* M.R.A.P.

8

2(c); ***United Am. Ins. Co. v. Merrill***, 978 So. 2d 613, 631 (Miss. 2007) (arguments that cited no authority, in violation of Rule 28(a)(6), were addressed "for informational purposes"); ***Vicksburg Partners v. Stephens***, 911 So. 2d 507, 512-13 (Miss. 2005), overruled on another issue by ***Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex. rel. Braddock***, 2009 WL 2393918 (Miss. August. 6, 2009) (a pro se appellee submitted no brief; Court used "the briefs and pleadings submitted to the trial court by her trial attorneys"). Cleary cites ***Entergy Mississippi, Incorporated v. Bolden***, 854 So. 2d 1051(Miss. 2003), which states that "'an argument unsupported by cited authority need not be considered by the Court.'" ***Id.*** at 1057 (quoting ***Dowdle Butane Gas Co. v. Moore***, 831 So. 2d 1124, 1136 (Miss. 2002)). The language "need not" allows this Court to consider such an argument. Further, in ***Bolden***, the appellant was not proceeding pro se, and there were no briefs available from an intermediate appeals court as we have here. ***Id.*** at 1051. Therefore, we suspend enforcement of Rule 28(a) and consider the issues raised, and the arguments made, by Green's attorney.

¶18.    The issues discussed below are as follows:

(1)    Whether this Court has jurisdiction over the decisions made by the Commission in 2000 and 2005.

(2)    Whether Green has standing to maintain this action on appeal.

(3)    Whether it was reversible error to deny Green's motion to amend his complaint.

(4)    Whether it was reversible error to dismiss Green's complaint.

(5)    Whether it was reversible error to deny Green a hearing.

(6)    Whether the complaint should have triggered an "adequacy of service" proceeding.

9

**DISCUSSION**

¶19.    Our standard of review is as follows:

A court faced with the review of a decision of an administrative agency is very limited as to the scope and depth of its inquiry. Rule 5.03 of the Uniform Circuit and County Court Rules provides that the reviewing court will entertain an appeal only to determine if the order or judgment of the lower authority was: 1) supported by substantial evidence; 2) arbitrary or capricious; 3) beyond the power of the lower authority to make; or 4) violated some statutory or constitutional right of the complaining party.

*Thomas v. Pub. Employees' Ret. Sys.*, 995 So. 2d 115, 118 (Miss. 2008) (citing *Fulce v. Pub. Employees' Ret. Sys.*, 759 So. 2d 401, 404 (Miss. 2000)); *see also* Miss. Code Ann. § 77-3-67(4) (Rev. 2001).   "A rebuttable presumption exists in favor of the action of an administrative agency, and the burden of proof is on the party challenging an agency's action." *Hill Bros. Constr. & Eng'g Co. v. Miss. Transp. Comm'n*, 909 So. 2d 58, 64 (Miss. 2005) (citing *Pub. Employees' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (Miss. 2000)).

**I.    Whether this Court has jurisdiction over the decisions made by the Commission in 2000 and 2005.**

**A.    The Grant of a Supplemental CCN in 2000.**

¶20.    The chancellor found that Green was not appealing the grant of the supplemental CCN, but if he had been, his appeal would have been time-barred.  Thirteen of the fourteen issues brought to this Court by Green deal with the Commission's 2000 grant of the supplemental CCN.  His attorney argued in his chancery court brief that the court had jurisdiction to revoke the supplemental CCN.  Thus, Green is attempting to appeal the supplemental CCN decision by way of appealing the Commission's orders in 2005.  However, the chancellor correctly found that the court was without jurisdiction to hear such

10

an appeal. Mississippi Code Section 77-3-67(1) (Rev. 2001) requires an appeal of an order of the Commission to be filed within thirty days of the order. *Id.* Green's appeal was filed more than four years after the order granting the supplemental CCN. This Court has stated, "Where an appeal is not perfected within the statutory time constraints no jurisdiction is conferred on the appellate court; and the untimely action should be dismissed." *Bowen v. DeSoto County Bd. of Supervisors*, 852 So. 2d 21, 23 (Miss. 2003) (citing *Newell v. Jones County*, 731 So. 2d 580 (1999)). *See also Dependents of Townsend v. Dyer Woodturnings, Inc.*, 459 So. 2d 300, 302 (Miss. 1984) (dismissed for lack of jurisdiction; notice of appeal not timely submitted to a state commission).

¶21. Further, as Green was not a party to the grant of the supplemental CCN, he may not appeal from that decision. *See* Miss. Code Ann. § 77-3-67(1) (Rev. 2001) ("any party aggrieved by any final finding, order or judgment of the commission . . . shall have the right . . . of appeal to the chancery court"); *see also In re Appeal of Final Decisions of Pub. Serv. Comm'n*, 604 So. 2d 218, 219-22 (Miss. 1992) (appeal by electricity customers dismissed, as they had not properly intervened to become parties to a rate-setting decision). This Court has held that "'statutes which allow a 'party' to appeal, as a rule, limit the right to those who were original parties to the action or proceeding.'" *Id.* at 222 (quoting *Ridgway v. Scott*, 237 Miss. 400, 405, 114 So. 2d 844, 845 (1959)).

¶22. Green argues that the appeal deadline in Mississippi Code Section 77-3-67 is inapplicable because the notice did not give him "fair notice and an opportunity to be heard." *Miss. Power Co. v. Goudy*, 459 So. 2d 257, 263, 271 (Miss. 1984) (the Commission's rate-approval procedure survived constitutional challenge). Green does not deny that notice was

11

made in accordance with the statute, but claims that notice was inadequate because it did not inform him that a decentralized system would be implemented. The applicable notice statute requires the following:

> The commission shall fix the time and place of hearings and shall serve notice thereof, not less than twenty (20) days before the time set for such hearings . . . . Notice of all such hearings shall be given the persons interested therein by mailing such notice to each public utility which may be affected by any order resulting therefrom and by publication in a newspaper of general circulation published in Jackson, Mississippi, and, in a proceeding for a facility certificate or an area certificate, by publication in a newspaper of general circulation in the county or counties where the facility or area is located.

Miss. Code Ann. § 77-3-47 (Rev. 2001). It is undisputed that the Commission filed a timely notice in The Clarion-Ledger, a newspaper published in Jackson and of general circulation in the City of Jackson and in Rankin County. The remaining cases cited by Green on this issue all are clearly distinguishable.

¶23. The Commission found that Green was attempting to impose a notice requirement (the type of sewer to be utilized) beyond that required by statute. *See* Miss. Code Ann. § 77-3-47 (Rev. 2001). The statute does not require such notice. Green was notified of the planned implementation of the decentralized sewer system, not at the time of the expansion of the certificated area, but the next year when Cleary adopted the ordinance. Cleary published notice concerning the adoption of the ordinance, and then passed the ordinance after a public hearing at which no one expressed opposition. *Green I*, 910 So. 2d at 1025.

¶24. Green's central complaint is that Cleary pulled a "bait and switch" on him and the other petitioners, by claiming it would construct a sewer system for the area, while having no intent to do so. Cleary's manager said in a newspaper article as early as 2002 that the

12

decentralized sewer system was "not something we did overnight. This was two or three years in the making." Cleary's manager also said that a centralized system would cost approximately $17,000 per home. The allegations against Cleary are of no event, for, even if the chancellor had granted them credence, they do not alter the fact that the appeal was untimely filed.

**B.    The Denial of Leave to Amend and the Dismissal of the Complaint in 2005.**

¶25.    Following the same analysis, the chancellor found that the chancery court was without jurisdiction to hear an appeal of the denial of Green's motion to amend. The thirty-day appeal deadline applies to any "final finding, order or judgment of the commission . . . ." Miss. Code Ann. § 77-3-67(1) (Rev. 2001). The Commission issued its "Order Denying Motion" on February 23, 2005. Green did not appeal until April 21, 2005. Thus, if the statute applies to the February order, the chancellor was correct. However, in ***Mississippi Power Company v. Mississippi Public Service Commission***, 240 Miss. 621, 128 So. 2d 351 (1961), this Court affirmed a chancery court's dismissal of an interlocutory appeal from the Commission's procedural orders. ***Id.*** at 629. This Court held that it was without jurisdiction over interlocutory appeals from the Commission. ***Id.*** at 627, 629. In doing so, the Court applied a prior version of the applicable statute, section 7716-26 of the Mississippi Code of 1942, which has not been amended in any way relevant to this issue. Therefore, Green was not required to appeal the denial of his motion to amend within thirty days of the order. If he had, as an interlocutory appeal, it would have been properly dismissed and remanded to the Commission. The thirty-day appeal deadline applies only to the final order issued April

13

5, 2005. Thus, the chancery court did have jurisdiction to consider the order denying Green's motion to amend. Further, the chancery court had jurisdiction to entertain an appeal of the April 5, 2005, dismissal of Green's complaint. Green appealed within the thirty-day statutory deadline of the final order dismissing his complaint. *See* Miss. Code Ann. § 77-3-67(1) (Rev. 2001).

II.     **Whether Green has standing to maintain this action on appeal.**

¶26.     Standing is a legal question; thus the decision of the Commission on this matter is not entitled to the same level of deference as cited *supra*. The applicable standard of review is as follows:

> The order shall not be vacated or set aside either in whole or in part, *except for errors of law*, unless the court finds that the order of the commission is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the commission, or violates constitutional rights.

Miss. Code Ann. § 77-3-67(4) (Rev. 2001) (emphasis added).

¶27.     Cleary cites rule 11B(1) of the Commission's rules, which states that a complainant "must affirmatively show . . . a direct and substantial interest in the subject matter . . . ." Code Miss. R. 26-000-001 (2008). Green cites caselaw requiring the assertion of a "colorable interest . . . *or* . . . an adverse effect . . . ." *City of Belmont v. Miss. State Tax Comm'n*, 860 So. 2d 289, 296 (Miss. 2003); *State v. Quitman County*, 807 So. 2d 401, 405 (Miss. 2001) (emphasis added). Both the Commission and the chancery court held that Green was without standing. The Commission found that Green had shown no justiciable interest. The chancellor used a two-step analysis, finding that it was "clear" that Green had

14

an *interest*, as a decision of the court "could affect an interest Green has in his property." However, the chancellor found Green to be *without standing* because he had alleged no injury or threat of an injury. While it may be true that Green cited no injury, that does not equate to a lack of standing. He claims injury from the fact that he would have expenses in connecting to a central sewer system, although there are no current plans to construct or extend the sewer into Green's area. Green also claims injury from Cleary's plans to take ownership of IOWDSs, but that claim is moot, as the ordinance no longer includes such a clause.

¶28. Despite the lack of showing of an injury, Green could still have standing. This Court has stated, "It is well settled that 'Mississippi's standing requirements are quite liberal.'" *Quitman County*, 807 So. 2d at 405 (quoting *Dunn v. Miss. State Dep't of Health*, 708 So. 2d 67, 70 (Miss. 1998)). This liberality is due to the lack of "cases and controversies" language in Mississippi's Constitution as compared to Article III, Section 2 of the U.S. Constitution. *Quitman County*, 807 So. 2d at 405. "Therefore, this Court has been 'more permissive in granting standing to parties who seek review of governmental actions.'" *Id.* (quoting *Van Slyke v. Bd. of Trs. of State Insts. of Higher Learning*, 613 So. 2d 872, 875 (Miss. 1993)). In *USPCI of Mississippi v. State ex rel. McGowan*, 688 So. 2d 783 (Miss. 1997), this Court held that "the 'standing' requirement . . . allow[s] a private citizen to challenge governmental actions contrary to law where the actions would otherwise escape challenge . . . ." *Id.* at 789.

¶29. The test for standing in Mississippi is as follows: "Parties may sue or intervene where they assert a colorable interest in the subject matter of the litigation *or* experience an adverse

15

effect from the conduct of the defendant, or as otherwise authorized by law." *City of Belmont*, 860 So. 2d at 296 (emphasis added) (citations omitted). *See also City of Starkville v. 4-County Elec. Power Ass'n*, 909 So. 2d 1094, 1104 (Miss. 2005). The chancellor found correctly that Green had an interest in the litigation. As Green is a resident of the certificated area, a decision by the Commission may affect an interest he has in his property. However, in his apparent attempt to resurrect *Green I* claims, he pleaded no injury, loss, harm, or the threat of same. His 2004 complaint would be subject to an analysis akin to that of Mississippi Rule of Civil Procedure 12(b)(6), and therefore, was subject to dismissal under MPSC Rule 11B(3). There being no new claim offered, we cannot say there is an inconsistency with the Commission's rule, which "cannot supersede the requirements of . . . the pertinent rules of law." *Capital Elec. Power Ass'n v. Miss. Power & Light Co.*, 240 Miss. 139, 153, 125 So. 2d 739, 744 (1961).

### III. Whether it was reversible error to deny Green's motion to amend his complaint.

¶30. Green moved to amend his complaint to say that notice of the supplemental CCN was not proper or adequate because he received no notice that a decentralized system would be used. In its order denying the motion, the Commission noted that the statutory notice requirements had been met, and stated that Green was seeking to impose a notice requirement beyond that required by statute. The chancellor treated this as a moot issue, for he already had found that the court had no jurisdiction over this matter. Since jurisdiction was proper, we consider this issue.

16

¶31. The Commission's rules do not explicitly grant the power to deny a motion to amend, but as an administrative agency "in the exercise of judicial or quasi-judicial powers," the Commission has that authority. *Love v. Miss. State Bd. of Veterinary Exam'rs*, 230 Miss. 222, 230, 92 So. 2d 463, 467 (1957). "Administrative agencies are, as a general rule, unrestricted by the technical or formal rules of procedure which govern trials before a court." *Id.* Specifically, the Mississippi Rules of Civil Procedure are not applicable at administrative proceedings. *Miss. Real Estate Appraiser Licensing & Certification Board. v. James*, 730 So. 2d 1135, 1139 (Miss. 1999).

¶32. Green cites Rule 11B(3) of the Commission's rules, alleging that the Commission violated its own rule by not notifying Green and his attorney of Green's right to amend. The rule reads as follows:

> Procedure. Upon the filing of such a complaint, the Commission will immediately examine the same to determine whether it alleges a prima facie case and conforms to these rules. If the Commission is of the opinion that the complaint does not allege a prima facie case or does not conform to these rules, it will notify the complainant or his attorney to that effect, and opportunity may be given to amend the complaint within a specified time.

Code Miss. R. 26-000-001 (2008). The rule applies to the original complaint, for which there would have been no reason to have notified Green or his attorney. Further, the rule uses permissive, not mandatory, language regarding the opportunity to amend. The remainder of Green's argument refers to alleged problems with the 2000 grant of a supplemental CCN for which the time to appeal has lapsed. As we find that the Commission did not commit reversible error in denying Green's motion to amend, the result, although for a different reason than articulated by the chancellor, is the same.

17

**IV. Whether it was reversible error to dismiss Green's complaint.**

¶33. The Commission dismissed Green's complaint for two reasons: (1) The statutory procedure under Mississippi Code Section 77-3-21 (Rev. 2001) is the exclusive method for canceling a CCN. It requires a finding that a utility is not providing "reasonably adequate service," a contention Green did not allege. (2) Because of the permissive language in the supplemental CCN, the Commission was not required to cancel it when sewer construction did not commence within six months. The chancellor used the same analysis in affirming the Commission.

¶34. "'Substantial evidence means more than a scintilla or suspicion.'" *Miss. State Dep't of Health v. Baptist Mem'l Hosp.-DeSoto, Inc.*, 984 So. 2d 967, 975 n.13 (Miss. 2008) (quoting *Miss. State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So. 2d 973, 977 (Miss. 1999)). This court has defined arbitrary and capricious as follows:

> "Arbitrary" means fixed or done capriciously or at pleasure. An act is arbitrary when it is done without adequate determining principle; not done according to reason or judgment, but depending upon the will alone, – absolute in power, tyrannical, despotic, nonrational, – implying either a lack of understanding of or a disregard for the fundamental nature of things. "Capricious" means freakish, fickle, or arbitrary. An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.

*Hill Bros. Constr.*, 909 So. 2d at 70 (quoting *In re Hous. Auth. of Salisbury*, 70 S.E.2d 500, 503 (N.C. 1952)).

¶35. Mississippi Code Section 77-3-21 (Rev. 2001) allows the Commission to make findings on whether a utility is providing "reasonably adequate service." *Id.* The

18

Commission may order a utility to correct specified problems, and if the utility fails to do so, the Commission may revoke a CCN if it finds that revocation would be in the "best interest of the consuming public . . . ." *Id.* This Court has held that this statutory process is the "exclusive method" for cancellation of CCNs. *Delta Elec. Power Ass'n. v. Miss. Power & Light Co.*, 250 Miss. 482, 506-07, 149 So. 2d 504, 511 (1963) ("The statutory expression of one method for cancellation of certificates is justly to be construed as an exclusion of other methods").

¶36. The order granting the supplemental CCN stated, "Construction on the proposed sewer system shall be commenced within six (6) months from the effective date of this Order or this Certificate *may* be canceled." (Emphasis added.) Rule 7A(4) of the Commission's rules allows the use of mandatory language requiring commencement within 180 days, leading to automatic voiding of a CCN if the deadline is not met. *See* Code Miss. R. 26-000-001. The Commission submits that it uses this mandatory provision when timing is crucial. Here, timing was not crucial, and the permissive language merely allowed the Commission to begin revocation proceedings if necessary. Green's arguments on this issue are without merit.

¶37. The rest of Green's argument against the dismissal is based on claims of the following: (1) an inadequate and improper notice of the 2000 supplemental CCN proceedings, (2) a taking of his property, and (3) false statements and concealment of facts by Cleary and the Commission and its staff. All these issues have been dealt with elsewhere in this opinion. Based on the analysis above, we find that the Commission did not commit reversible error in dismissing Green's complaint.

19

**V.  Whether it was reversible error to deny Green a hearing.**

¶38.   The Commission cited Commission Rule 11D, which allows for the dismissal of a complaint without a hearing if such a hearing is "not necessary to the public interest or for the protection of substantial rights."  Code Miss. R. 26-000-001.  The Commission justified this by stating the following: (1) Cleary had explained the delay in sewer implementation, (2) Green had no direct and substantial interest in the subject matter, (3) Green had not alleged inadequate service, and (4) the Commission was not required to revoke the supplemental CCN if sewer construction did not begin in six months.  The chancellor affirmed the Commission's ruling, using the same analysis.

¶39.   The Commission is authorized, by a Commission rule (11D) and by statute, to dismiss a complaint without a hearing.  *See* Code Miss. R. 26-000-001; Miss. Code Ann. § 77-3-47 (Rev. 2001).  *See also **Arnold Line Water Ass'n v. Miss. Pub. Serv. Comm'n***, 744 So. 2d 246, 250 n.2 (Miss. 1999).  A hearing was "not necessary in the public interest or for the protection of substantial rights."  Miss. Code Ann. § 77-3-47 (Rev. 2001).  Green's rights were not infringed by the lack of a hearing.  As noted elsewhere, (1) the takings issue, as alleged in *Green I*, is now moot; and (2) the statutory notice requirements were satisfied.  *See Green I*, 910 So. 2d at 1030-31.  The public interest would not have been served by granting Green a hearing, which would have been futile.  We find that the Commission did not commit reversible error in denying Green a hearing.

**VI.  Whether the complaint should have triggered an "adequacy of service" proceeding.**

20

¶40. Neither Green's complaint, nor his aborted amendment, alleged any inadequacy of service on the part of Cleary. Mississippi Code Section 77-3-21 (Rev. 2001) is the exclusive method by which the Commission may cancel a CCN. *Delta Elec. Power Ass'n*, 149 So. 2d at 511. The Commission may call for hearings on adequacy of service on its own motion. *See* Miss. Code Ann. § 77-3-21 (Rev. 2001). Alternatively, the Commission is obliged to hold such hearings if at least ten percent of a public utility's subscribers file a complaint alleging inadequate service. *See* Miss. Code Ann. § 77-3-11(5) (Rev. 2001).

¶41. Green argues that his complaint should have been taken as an allegation of inadequate service. Green attempts to buttress his argument by stating that (1) he was joined by 122 others in *Green I*, and (2) he obtained 160 signatures on his petition asking the Rankin County Board of Supervisors to intervene with the Commission. *See Green I*, 910 So. 2d at 1024. It is true that either of these numbers (122 or 160) represents a sufficient number of complainants. However, none of Green's arguments can make up for the fact that he did not allege any inadequacy of service in his complaint to the Commission. Further, none of the other "petitioners" actually joined in Green's complaint to the Commission. We find that the Commission did not err by failing to institute adequacy of service proceedings against Cleary.

## CONCLUSION

¶42. This Court has jurisdiction over the orders of the Commission in 2005, but not over the grant of the supplemental CCN in September 2000. Green has standing to bring this action. It was not reversible error for the Commission to (1) deny Green's motion to amend his complaint, (2) dismiss Green's complaint, (3) deny a hearing, (4) decline to institute

21

adequacy of service proceedings. Although we employ a different analysis than the tribunals below, "'[i]t is well established in our jurisprudence that the right result reached for the wrong reason will not be disturbed on appeal.'" *Cucos, Inc. v. McDaniel*, 938 So. 2d 238, 247 (Miss. 2006) (quoting *Accredited Sur. & Cas. Co., Inc. v. Bolles*, 535 So. 2d 56, 60 (Miss. 1988)). Therefore, the judgments of the Mississippi Public Service Commission and of the Chancery Court of Rankin County are affirmed.

¶43. **AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.**