PIERCE, Justice,
for the Court:
¶ 1. On April 22, 2005, Eddie Mitchell shot and killed Cliff Patterson while both were working as mechanics at Anglin Tire in Jackson, Mississippi. Mitchell claimed that he killed Patterson in self-defense. A jury in the First Judicial District of Hinds County found Mitchell guilty of murder, and as a result, the trial court sentenced Mitchell to life in prison. At issue on appeal is whether the trial court properly instructed the jury on self-defense and manslaughter; whether the trial court erred in admitting evidence of a past physical altercation between Mitchell and a former coworker; whether prosecutorial misconduct existed in cross-examination and closing arguments; and whether trial counsel was ineffective.
FACTS
¶2. Mitchell and Patterson had known each other for sixteen years and had worked with each other for eight years. Around October 2004, Patterson accused Mitchell of stealing one of his tools, and although Patterson later found the missing tool that same day, he continued to maintain that Mitchell had taken it. According to Mitchell, Patterson refused to speak with him and informed him that he should not borrow any more of his tools. Patterson also agreed not to use Mitchell’s tools, microwave, or refrigerator. Even though Mitchell claims that he and Patterson were having a six-month dispute over a missing tool, the shop supervisor and the other employees who testified were unaware of any animosity between Mitchell and Patterson.
¶ 3. The day before Mitchell killed Patterson, April 21, 2005, Mitchell claimed that Patterson had used his microwave and refrigerator. Mitchell said he then reminded Patterson about their agreement not to use each other’s things, at which point Patterson became extremely angry and threatened to kill Mitchell. Mitchell said that Patterson then went to his truck, got a gun, and placed it in his toolbox. However, the day ended without further incident, and in fact, Timothy Wiley, the shop supervisor, testified that all of the shop employees stayed after closing to have a few beers together.
¶ 4. Mitchell testified that, on April 22, 2005, while Patterson was working with a bench-vise, he approached Patterson to discuss their differences. Mitchell asserted that Patterson again became angry and began to come after him. Mitchell claimed that he had believed that Patterson might use the wrench he was using as a weapon, so Mitchell went to his toolbox to retrieve his .38 caliber pistol. Mitchell averred that, once he had his pistol, he fired, hitting Patterson in the torso. Mitchell claimed that Patterson then turned around to go to his toolbox, and Mitchell thought that he may have been going to get a gun Mitchell claimed Patterson had placed there earlier. However, Patterson never made it to his toolbox, because Mitchell shot him two more times — once in the back of the shoulder and once in the back of the head.
¶ 5. After the shooting, investigators did not find a wrench near Patterson’s body, nor did they find a gun in his toolbox. Jackson Police arrested Mitchell and took him to the police station to give a state *588 ment. Detective Tyree Jones interviewed Mitchell for forty-five minutes and took a written statement from Mitchell, who confessed to killing Patterson.
¶ 6. Mitchell’s trial began on December 18, 2006, and at trial, two of Mitchell’s coworkers testified to having seen Mitchell shoot Patterson. Although Mitchell maintains that he acted in self-defense in killing Patterson, no one testified to knowing about any animosity between Patterson and Mitchell, and no one testified to seeing Patterson threaten Mitchell in any manner at any time. The jury unanimously found Mitchell guilty of murder, and Mitchell now appeals his conviction.
¶ 7. On appeal, Mitchell asserts that the trial court improperly instructed the jury on self-defense and manslaughter; that the trial court erred in allowing evidence of a past physical altercation between Mitchell and a former eoworker; that the prosecutor committed misconduct in cross-examination and closing arguments; and that he was a victim of ineffective assistance of counsel. We hold that the trial court properly instructed the jury; the trial court did not err in admitting evidence of a past physical altercation; prose-cutorial misconduct did not take place during cross-examination nor during closing arguments; and trial counsel gave effective representation. Therefore, the judgment of the Circuit Court of Hinds County should be affirmed.
DISCUSSION
¶ 8. Mitchell admits that defense counsel made no objections on his behalf at trial, which would have preserved the issues for appeal. Therefore, he asks that this Court review his assignments of error under the plain-error doctrine. In addition, he asserts that his constitutional right to a fair trial was violated. Normally, the failure to make an objection imposes a procedural bar, prohibiting an appellate court from review.[1] Yet, Mississippi case-law establishes that when fundamental rights are implicated, this Court will not impose procedural bars and will review for plain error.[2] And the Due Process Clauses of the Fifth and Fourteenth Amendments guarantee a criminal defendant the right to a fair trial in all criminal prosecutions.[3] “To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial.”[4] If a criminal defendant is not given a fair trial, his or her constitutional rights have been violated. However, merely asserting a constitutional-right violation alone is insufficient to overcome procedural bars.[5] “There must at least appear to be some basis for the truth of the claim before the procedural bar will be waived.”[6] Therefore, this Court must review the record based on Mitchell’s assignments of error to determine whether any arguable basis exists for Mitchell’s claim that his right to a fair trial *589 has been violated.[7]
I. Whether the trial court properly instructed the jury on murder, self-defense and manslaughter.
¶ 9. Mitchell asserts that the jury instructions on self-defense and manslaughter either individually or cumulatively denied him his constitutional rights to a fair trial, to a properly instructed jury, and to present his theory of defense. Mitchell admits in his brief that defense counsel made no objections to the jury instructions as given, but he asserts that, because his fundamental rights were violated, his designations of error should not be barred.
¶ 10. “Every person is entitled to a fair and impartial trial, and the dispensing of justice is the object of the courts.”[8] It is undeniable that Mitchell has a right to a fair trial, and for the trial to be fair, the jury must be instructed properly on the theory of defense for which he presented proof.[9] This Court’s primary concern regarding jury instructions is whether “the jury was fairly instructed and that each party’s proof-grounded theory of the case was placed before it.”[10] However, a defendant’s entitlement to jury instructions is limited because the court can refuse instructions which incorrectly state the law, are covered elsewhere in the instructions, or where no foundation in evidence exists for such an instruction.[11]
¶ 11. This Court reviews jury instructions as a whole and not in isolation.[12] And when this Court reads the instructions as a whole, it will not find reversible error so long as the instructions given fairly announce the law and do not stand to create injustice.[13] In other words, “[rjeversal is not warranted when instructions, taken as a whole, fairly, though not perfectly, announce the law.”[14]

A. Self-Defense

¶ 12. The trial court gave its own instructions on self-defense and is allowed to do so by rule.[15] In fact, the trial court gave two self-defense instructions, C-6 and C-7. Jury instruction C-6 read, in pertinent part, as follows:
The Court instructs the jury that the killing of a human being by the act of another is justifiable under the law if done in the lawful defense of one’s person under certain circumstances. To make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present, and urgent, or the defendant must have objectively reasonable grounds, in the opinion of the jury, to apprehend a design on the part of the deceased to kill him or do him some great bodily harm. In addition, the defendant must have *590 objectively reasonable grounds to apprehend that there is imminent danger of such design being accomplished.
It is for the jury to determine the reasonableness of the ground upon which the defendant acts. If the jury determines that the defendant in this case, Eddie Mitchell, killed Cliff Patterson in necessary self-defense, as defined above, then you must find the defendant not guilty.
Jury instruction C-7 read as follows:
The Court instructs the jury that while the danger that would justify the taking of another’s life must be imminent, impending, and present, such danger, if any, need not be unavoidable except by killing in self-defense. So long as the defendant, Eddie Mitchell, was in a place where he had the right to be and was neither the immediate provoker nor aggressor, he had the right to stand his ground and resist force with force, taking care, however, that any such resistance was not disproportionate to any attack upon him or any imminent threat to do him some great bodily harm by the deceased, Cliff Patterson.
Under these instructions, Mitchell alleges on appeal that the jury was instructed improperly, because the instructions conflict on a material issue — imminent, impending, and present danger. More specifically, Mitchell claims that imminent, impending, and present danger is not required. Additionally, he contends that it was improper for the trial court to use the language “in the opinion of the jury.” He further argues that he was deprived of his imperfect self-defense theory because of the trial court’s omission, and that C-6 improperly shifted the burden to Mitchell to prove that he acted in self-defense.
¶ 13. The cases Mitchell cited fail to address the issue of whether imminent danger is required. Rather, the cases Mitchell cited focus on his subjective belief and whether, under that belief, he could have used reasonable force. And in fact, Mitchell cited a headnote, drafted by a legal publisher as if it were caselaw, from Godwin v. State, 73 Miss. 873, 19 So. 712 (Miss.1896), stating that the danger is to be imminent. Nevertheless, Mississippi Code Section 97 — 3—15(f), the justifiable homicide statute, requires that “there shall be imminent danger” in order for one lawfully to “defend one’s own person.”[16] At one time, common law required the danger to be actual, but now, the danger required must be that which is reasonably apparent and imminent.[17]
¶ 14. Although Mitchell testified at trial that he and Patterson were having a six-month dispute over a missing tool, none of the other employees testified to knowing about it, and the testimony elicited showed that, on the day before the shooting, both Mitchell and Patterson stayed after work with the other employees to have a few beers. Yet, Mitchell claimed that he initially believed that Patterson may have been coming at him with a wrench, so he shot him in the stomach area. Then, he shot him two more times in the back after Patterson turned away, because Mitchell claims he additionally believed that Patterson may have been going for a gun. However, the investigators did not find a wrench near Patterson’s body, nor did the investigators find a gun in Patterson’s belongings at the tire shop.
¶ 15. The issue of self-defense is to be determined by the jury.[18] All factual *591 disputes in this regard are determined by the jury and “do not mandate a new trial.” [19] The jury was presented with all the facts, both Mitchell’s account as well as the other witnesses’ accounts. In other words, the jury heard from Mitchell that he shot a man who was wielding a wrench, and the jury heard from other disinterested witnesses that Mitchell shot an unarmed man. Moreover, the jury heard from Mitchell that he and Patterson were fighting over tools, the use of a microwave, and the use of a refrigerator. They also heard through testimony that both men stayed around the night before with other employees to have some beers. The jury is charged with determining the truth. Obviously, it was unpersuaded by Mitchell’s testimony. Accordingly, Mitchell’s argument is without merit.

B. Manslaughter

¶ 16. Mitchell contends that the trial court’s instruction on murder in C-5 deprived him of his imperfect self-defense theory (the subject of C — 6), and that it shifted the burden of proof to the defense. C-5 read:
I.
The Court instructs the jury that murder is the killing of a human being, not in necessary self-defense, and without authority of law, by any means or any manner, when done with malice aforethought or deliberate design to effect the death of the person killed or any other person. The Court further instructs the jury that if you find from the evidence in this case, beyond a reasonable doubt, that:
1) the defendant, Eddie Mitchell, on or about April 22, 2005, in the First Judicial District of Hinds County, Mississippi,
2) killed Cliff Patterson, a human being, without authority of law, by any means or in any manner, with malice aforethought or deliberate design to effect the death of Cliff Patterson, and
8) the defendant, Eddie Mitchell, was not then and there acting in necessary self-defense,
then and in that event the defendant, Eddie Mitchell, is guilty of murder and it is your sworn duty to so find.
The Court further instructs the jury that the terms “malice aforethought” and “deliberate design,” as used in these instructions of the Court, means a full awareness of what one is doing and generally implies careful and unhurried consideration of the consequences; to calculate, plan and contemplate. Malice aforethought or deliberate design cannot be formed at the very moment of the fatal act, however, malice aforethought or deliberate design need not exist in the mind of the defendant for any definite time, not for hours, days or even minutes, but if there is malice aforethought or deliberate design, and it exists in the mind of the defendant but for an instant before the fatal act, this is sufficient malice aforethought or deliberate design to constitute the offense of murder.
II.
The Court further instructs the jury that if the State fails to prove, beyond a reasonable doubt, each and every element of murder, as set forth above, you may not find the defendant guilty of murder, but should proceed in your deliberations to determine whether the said defendant is guilty of the lesser offense of manslaughter, as defined in other instructions of the Court.
*592 The trial court instructed the jury on manslaughter as part of C-6, which read, in pertinent part, as follows:
The Court further instructs the jury, however, that the killing of another person without malice aforethought or deliberate design, as defined in other instructions of the Court, under the defendant’s bona fide belief, but without objectively reasonable grounds in the opinion of the jury, that it was necessary for him to do so in order to prevent the deceased from inflicting death or great bodily harm upon him, is manslaughter. If the defendant’s apprehension was objectively reasonable in the opinion of the jury, the killing is justifiable, in which event you must find the defendant not guilty. If, on the other hand, the defendant’s apprehension is only subjectively, in his own mind, reasonable, the killing is manslaughter.
Therefore, the Court instructs the jury that if you find from the evidence in this case, beyond a reasonable doubt, that the defendant, Eddie Mitchell, on or about April 22, 2005, in the First Judicial District of Hinds County, Mississippi:
1) killed Cliff Patterson, a human being;
2) without malice aforethought or deliberate design, as those terms are defined in other instructions of the Court;
3) under the bona fide belief, in his own mind, that it was necessary for him to do so in order to prevent the said Cliff Patterson from inflicting death or great bodily harm; but
4) such apprehension was not objectively reasonable in the opinion of the jury, then in that event, the killing of Cliff Patterson was without authority of law, not in necessary self-defense, and is manslaughter, for which it would be your sworn duty to find the defendant, Eddie Mitchell, guilty.
¶ 17. The instructions given to the jury regarding Mitchell’s imperfect self-defense theory were adequate, and the burden of proof was not shifted to the defense. The instructions clearly required the State to prove beyond a reasonable doubt that Mitchell was guilty of murder. And as mentioned previously, due to the testimony and evidence presented at trial, it is clear that the jury simply was unpersuaded by Mitchell’s testimony and returned a verdict accordingly. Moreover, the instructions cannot be read in isolation as Mitchell asks this Court to do; instead, this Court must take the instructions as whole.[20] Read as a whole, it is clear that the instructions given to the jury were sufficient and did not constitute a serious miscarriage of justice. As a result, Mitchell’s contentions are without merit.

C. Murder

¶ 18. Mitchell also challenges his murder instruction on the grounds that the “but for an instant” language was inappropriate. He cites Williams v. State[21] for the proposition that the phrase “but for an instant” requires reversal. However, this Court found no error with such an instruction in Young v. State.[22] Therefore, Mitchell’s argument is without merit.
II. Whether the trial court erred in admitting evidence of a past physical altercation between Mitchell and another individual.
¶ 19. Mitchell admits that defense counsel failed to object to evidence of *593 a past physical altercation. Yet, he maintains that his fundamental right to a fair trial was violated because the court admitted evidence of his past physical altercation with another individual where he worked. Evidence of prior bad acts is admissible as long as the requirements of the Rules of Evidence are met.[23] And a trial court enjoys a great deal of discretion in determining whether evidence is admissible.[24]
¶ 20. Mitchell premises his argument on Mississippi Rule of Evidence 404(b):
Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[25]
Mitchell argues that, because the prior bad act in question did not result in a conviction, the prosecution could not elicit any testimony about it, and thus, the trial court erred in admitting it. On cross-examination of Mitchell, the prosecution elicited testimony that he had engaged in a past physical altercation with a previous employee, Wendell Christmas. However, defense counsel failed to object. Regardless, the comment to Rule 404(b) specifically addresses this issue: “[tjhese past acts admitted into evidence may be ones for which the person in question was either convicted or not convicted.”[26] Therefore, Mitchell’s mere assertion of a violation of his fundamental right to a fair trial is insufficient.
¶ 21. Essentially, a trial court cannot err when it makes no ruling.[27] Objections are a fundamental concept of the practice of law, because an objection prevents costly new trials, allows the offering party a chance to avert the objection, and an objection grants the trial court an opportunity to rule on the issue.[28] Although it is the duty of the trial court “to direct the activity of the juries, the lawyers, and the litigants,”[29] the trial court has no duty to interfere with an attorney’s particular line of questioning, for objecting is the province of the defense attorney. Because no objections were made, the trial court could not pass judgment, and therefore, cannot be in error on a ruling never made.[30]
III. Whether prosecutorial misconduct existed in cross-examination and closing arguments.
¶ 22. Even in the absence of defense objection, Mitchell asserts that his fundamental right to a fair trial was violated by prosecutorial misconduct. Mitchell alleges that the State erred when it referred to his past physical altercation with Wendell Christmas during closing arguments;, mis *594 stated the evidence and the law; and asked improper questions during the cross-examination of Mitchell’s character witness, Rev. Lloyd Inmon — which allegedly impeded the jury’s ability to make important credibility evaluations. After a review of the record, we find no reversible error with regard to any of Mitchell’s points of contention comprising this issue.
¶23. First, the references made to the past physical altercation were proper because those references were made after Mitchell had placed his character in issue. However, Mitchell continues to assert that, for the past physical altercation to be referenced, he must have been convicted. Such argument is unsupported by the Mississippi Rules of Evidence.
¶ 24. Second, Mitchell’s argument that the State misstated the evidence is exaggerated. Mitchell claims that the State misstated the evidence on the cross-examination of Mitchell by making it appear that Mitchell never had seen Patterson with a gun the day before the shooting. Yet, the State presented Mitchell with his sworn statement taken after the shooting. The State attempted to impeach Mitchell’s testimony that he had seen Patterson with a gun the day before the shooting. Impeaching a witness with the witness’s own sworn statement is not a misstatement of the evidence, but basic trial tactics. Therefore, Mitchell’s claim has no foundation in law.
¶ 25. As to the cross-examination of Rev. Inmon, the record shows the following exchange:
Q: Pastor, you were not present at the Anglin Tire Company on April the 22nd of 2005, were you?
A: No.
Q: And are you aware that Eddie Mitchell has been charged with shooting Cliff Patterson three times?
A: Yes.
Q: And if he were convicted of that offense, would that have any effect on your belief or opinion about his reputation?
A: No.
Q: Would not?
A: No.
¶26. Relying on Craft v. State, 254 Miss. 413, 181 So.2d 140 (1965), and a Fifth Circuit case, United States v. Candelaria-Gonzalez, 547 F.2d 291 (5th Cir.1977), Mitchell contends the law is well established that a prosecutor may not ask a defendant’s character witness on cross-examination if his or her opinion of the defendant’s good reputation would change if the defendant were to be convicted of the charged offense. The State responds that the prosecution’s question was not improper under Craft.
¶ 27. We disagree with the State. Though somewhat lacking in its legal analysis on the issue, Craft more than seemingly holds that it is improper to ask a guilt-assuming question of a character witness testifying as to the defendant’s reputation in the community. But because we are limited to plain-error review in this instance, and because Craft and Candelaria-Gonzalez are distinguishable from this case in a number of significant respects, we need only point out what Mitchell fails to take into consideration by relying on these two cases for support of the notion that such a question constitutes per se reversible error.
¶ 28. Unlike here, the defense in Craft and Candelaria-Gonzalez had entered contemporaneous objections on the complained-of questions, which the trial court overruled in each case. In Craft, the defendant presented “many good citizens— *595 ministers, doctors, a banker, public offi-eers[,] and other prominent persons — who testified unequivocally that [defendant] bore a reputation of good character in the community.” Craft, 181 So.2d at 143. The trial court permitted the prosecution to ask each witness “whether or not they would have a different opinion if they were reliably informed of [the defendant’s] guilt of the crime for which he was then being tried.” Id. This Court emphasized that, even though the defendant had objected in most instances to this method of interrogation, the trial court had required the witnesses to answer. The Craft Court then touched on the substance of the error, which — procedurally speaking — was proper in that case, because the error had been preserved for appeal.
¶ 29. Craft also entailed other trial errors. In addition to the impropriety found with regard to the cross-examinations in the case, the Craft Court found that the defendant was unfairly prejudiced by an immaterial, obscene photograph allowed into evidence and by testimony relating that the codefendant had committed suicide after the arrest shown in the case. Id. at 417-21, 181 So.2d 140.
¶ 30. A reading of Candelaria-Gonzalez shows that the prosecutor had asked four of the defendant’s character witnesses if their opinion of defendant’s reputation for good character would be affected if the defendant were convicted of trafficking in narcotics, the crime for which the defendant stood charged. Candelaria-Gonzalez, 547 F.2d at 293. The defense had entered an objection in each instance on the ground of prejudice. Id. The trial court allowed the question to be asked to the first three witness, but ultimately sustained the objection when the question was asked of the last witness. Id. On appeal, the Fifth Circuit held that the trial court had abused its discretion in allowing the prosecutor to ask these hypothetical questions because they were not relevant for good character and were based on the assumption of the defendant’s guilt. Id. (emphasis added). Again, unlike here, the error(s) were preserved for appeal.
¶ 31. Notably, a year after Candelaria-Gonzalez was decided, the Fifth Circuit was presented with a similar issue in United States v. Palmere, 578 F.2d 105 (5th Cir.1978). There, one character witness was asked if his opinion of the defendant’s reputation for “truth and veracity” would change if the witness knew the defendant had smuggled cocaine into the country, the crime for which that defendant stood charged. Palmere, 578 F.2d at 107. The defense objected on the ground that the question was repetitive, and the trial court sustained. Relying on Candelaria-Gonzalez, the defendant argued on appeal that such a question was so prejudicial that his conviction must be reversed. Id. In affirming the defendant’s conviction, the Palmere court first noted that in Candelaria-Gonzalez, such a question had been put to multiple witnesses over the defense’s objection(s). Id. at 107-08. The Palmere court then stated the following:
In Candelaria [-Gonzalez,] the primary ground of reversal was the appearance of hostility toward the defense manifested by the court. We need not determine here whether under its authority a repeated resort by the prosecution to hypothetical questions of this sort is sufficient in and of itself to require reversal, since here the sole objection voiced was on grounds of repetitiveness. Thus, any reversal here would have to rest on a determination that one asking of such questions constitutes plain error. We conclude that it does not.
Id. at 107; see also U.S. v. Pirani, 406 F.3d 543, 554 (8th Cir.2005) (holding that, although it was improper for the prosecu *596 tor “to ask ... guilt-assuming questions” of the defendant’s character witness, “particularly one which assumed [the defendant] was guilty of the charged offenses,” the impropriety did not constitute plain error); U.S. v. Shwayder, 312 F.3d 1109, 1122 (9th Cir.2002) (holding that “asking character witnesses hypothetical questions that assume the defendant’s guilt during cross-examination is error[,]” but “error did not affect [defendant’s] substantial rights and thus does not warrant reversal under the plain error standard”).
¶ 32. Here, we have one question that was presented to one witness, with no objection from the defense so as to allow the trial court an opportunity to obviate the impropriety of it. From a plain-error standpoint, we can only surmise that the defense either made a deliberate, tactical decision not to object or was unfamiliar with Craft. Taking only the latter into consideration, we find that irrespective of appellate counsel’s legal acuity on the issue, it cannot be said that this type of issue is clear-cut. Craft appears to be the only Mississippi decision that has specifically addressed this issue. And we also point out that in Shwayder, a 2002 decision, the Ninth Circuit noted that neither it nor the United States Supreme Court had yet addressed whether a question by the prosecution on cross-examination which asks a witness to assume the defendant’s guilt for the crime charged constitutes error. Shwayder, 312 F.3d at 1121. In short, we cannot say the alleged error here was plain. Cox, 793 So.2d at 597. Moreover, based upon the record before us, we do not conclude that the outcome of Mitchell’s trial would have been different had it not been for this error.
¶ 33. Finally, in arguing prosecutorial misconduct, Mitchell’s brief misstates the record, reweighs the evidence, reexamines testimony of various witnesses, and makes various leaps of logic. The focus of this argument is apparently to show how the statements of the prosecutor shifted the burden of proof to the defense and undermined the ability of the jury to make credibility determinations. But, after review of the record in this regard, this Court finds no error in the prosecutor’s actions. Accordingly, Mitchell’s argument is without merit.
IV. Whether ineffective assistance of counsel existed.
¶ 34. Mississippi employs the Strickland test to determined whether trial counsel was ineffective.[31] Under Strickland, “a defendant must prove that his attorney’s performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial.”[32] Ineffective-assistance-of-counsel claims typically are reserved for post-conviction relief, since those claims generally rely on evidence outside the appellate record.[33] Nonetheless, this Court “will consider an ineffective-assistance claim on direct appeal if the presented issues are based on facts fully apparent from the record.”[34]
¶ 35. Mitchell’s contentions stem from his trial counsel’s failure to object. In some instances, the decision to object or not to object is a strategic determination of the trial attorney. Because this Court *597 is left to speculate at Mitchell’s trial counsel’s strategy, this Court -will leave the question of ineffective assistance of counsel to be resolved another day.
CONCLUSION
¶ 36. The trial court properly instructed the jury on self-defense and manslaughter. Moreover, the trial court did not err in allowing the prosecution to question Mitchell about a past physical altercation with a former coworker. Also, this Court fails to find where the prosecution committed misconduct. Finally, Mitchell’s claim of ineffective assistance of counsel cannot be substantiated from the appellate record. Accordingly, Mitchell’s conviction and sentence are affirmed.
¶ 37. CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND KING, JJ., CONCUR.

. Debrow v. State, 972 So.2d 550, 553 (Miss.2007).

. Anderson v. State, 62 So.3d 927, 949 (Miss.2011) (citing Graves v. State, 969 So.2d 845, 846-47 (Miss.2007)).

. Cone v. Bell, 556 U.S. 449, 129 S.Ct. 1769, 1772, 173 L.Ed.2d 701 (2009); U.S. v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (overruled on other grounds by U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985)).

. Cox v. State, 793 So.2d 591, 597 (Miss.2001).

. Means v. State, 43 So.3d 438, 442 (Miss.2010).

. Id.

. See id.

. Brooks v. State, 209 Miss. 150, 46 So.2d 94, 97 (Miss.1950).

. See Spires v. State, 10 So.3d 477, 483-84 (Miss.2009); see also Chinn v. State, 958 So.2d 1223, 1225 (Miss.2007).

. Banyard v. State, 47 So.3d 676, 681 (Miss.2010) (internal quotations omitted).

. Thomas v. State, 48 So.3d 460, 470 (Miss.2010); Newell v. State, 49 So.3d 66, 73-74 (Miss.2010); Banyard, 47 So.3d at 681; Spires, 10 So.3d at 483-84; Poole v. State, 826 So.2d 1222, 1230 (Miss.2002).

. Thomas, 48 So.3d at 470.

. Harden v. State, 59 So.3d 594, 608 (Miss.2011); Dedeaux Util. Co., Inc. v. City of Gulfport, 63 So.3d 514, 542 (Miss.2011); Newell, 49 So.3d at 73-74.

. Thomas, 48 So.3d at 470.

. URCCC 3.07.

. Miss.Code Ann. § 97-3-15(f) (Rev.2006).

. Scott v. State, 203 Miss. 349, 34 So.2d 718, 719 (Miss.1948).

. See Jones v. State, 39 So.3d 860, 865 (Miss.2010).

. Id.

. Thomas, 48 So.3d at 470.

. Williams v. State, 729 So.2d 1181, 1186 (Miss.1998).

. Young v. State, 891 So.2d 813, 820 (Miss.2005).

. Hargett v. State, 62 So.3d 950, 953 (Miss.2011).

. Id.

. Miss. R. Evid. 404(b).

. Miss. R. Evid. 404(b) cmt.

. Hughes v. Hosemann, 68 So.3d 1260, 1265 (Miss.2011).

. Oates v. State, 421 So.2d 1025, 1030 (Miss.1982).

. Roberson v. State, 257 So.2d 505, 508 (Miss.1972).

. See Tricon Metals & Servs., Inc. v. Topp, 516 So.2d 236, 239 (Miss.1987) ("Logic is strained at the thought of an appellate court affirming or reversing a decision never made.”).

. Williams v. State, 73 So.3d 1125, 1128-29 (Miss.2011) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

. Parker v. State, 30 So.3d 1222, 1233 (Miss.2010).

. Williams, 73 So.3d at 1129.

. Id.