ISHEE, J.,
for the Court:
¶ 1. Anthony Darrell Thomas was convicted in the Harrison County Circuit Court of depraved-heart murder and sentenced to life in prison for the death of Adrian Terrell Robinson. Thomas now appeals, arguing: (1) the jury’s verdict was against the weight and sufficiency of the evidence; (2) a mistrial should have been granted due to the admission of an unfairly prejudicial statement that his father made against him; (3) his counsel was ineffective; (4) the prosecutor made misleading statements during trial; (5) cumulative errors warrant reversal; and (6) the trial court incorrectly revoked his in forma pau-peris (IFP) status for purposes of appeal.
¶ 2. Finding no reversible error, we affirm.
STATEMENT OF FACTS
¶ 3. On April 24, 2003, Robinson, Cynthia Mullins, Bryan Malley, and Billy Weary (Thomas’s father) were at Weary’s home in Gulfport, Mississippi, where they frequently gathered to smoke crack cocaine. The house was described as a “shotgun house,” with three rooms in a row. The first two rooms were separated by a sheet or curtain hanging from the ceiling. Robinson and Mullins were in the first room, and Malley and Weary were in the middle room using drugs. Later that evening, Thomas came to the home and spoke to Robinson about an incident involving Thomas’s mother or sister. The details of the discussion are unclear from the record. Thomas left but returned later with three friends: Lionel Maurice[1] and two men identified only as Arthur and Jason. Thomas began arguing with Robinson and hit Robinson in the head with a blunt object.
¶ 4. On April 26, 2003, Weary called the police to report a body in his yard. Officer William Riddle with the Gulfport Police Department l'esponded. He searched the yard, but was unable to find a body. Weary again contacted the police. This time he took Officer Riddle directly to Robinson, who was on the ground near the road. Robinson was unconscious but alive. Robinson was taken to the hospital where he remained for approximately two months before passing away. The coroner found Robinson died of “brain damage due to a blow to the left side of the head.”
¶ 5. Thomas was indicted for depraved-heart murder, and his trial was held on March 4, 2008. However, a mistrial was declared when one of the State’s witnesses testified that Thomas had sold him drugs in the past.
¶ 6. Thomas’s second trial was held September 9 through September 10, 2008. Thomas was found guilty of depraved-heart murder and sentenced to life in the custody of the Mississippi Department of Corrections. He filed a motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, which was denied. He now appeals.
*361 DISCUSSION
I. Sufficiency and Weight of the Evidence
¶ 7. Thomas argues the jury’s verdict was not supported by the sufficiency and weight of the evidence because the State’s two eyewitnesses — Mullins and Malley— did not present credible or sufficient evidence that Thomas committed depraved-heart murder.
A. Sufficiency of the Evidence
¶ 8. A motion for a directed verdict or JNOV challenges the sufficiency of the evidence. Bush v. State, 895 So.2d 886, 848 (¶ 16) (Miss.2005). For evidence to be sufficient to sustain a conviction, it must show “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed....” Id. (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). We will reverse if the facts and inferences, viewed in the light most favorable to the State, “point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty....” Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). The evidence is viewed in the light most favorable to the State, and “[a]ll credible evidence consistent with the defendant’s guilt must be accepted as true...” Boyd v. State, 977 So.2d 829, 336 (1128) (Miss.2008).
¶ 9. In order to establish that Thomas had committed depraved-heart murder, the State was required to prove beyond a reasonable doubt that Thomas killed Robinson “without the authority of law by any means or in any manner ... in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual....” Miss.Code Ann. § 97 — 3—19(1)(b) (Rev. 2006).
¶ 10. At trial, Mullins testified that on the day of the murder, she, Weary, Robinson, and another man, whose name Mullins did not know, were in Weary’s home. Although she went to Weary’s house “[j]ust about every day” to smoke crack cocaine, she had not used any drugs that day. Mullins and Robinson sat and ate in the first room alone. At some point, Thomas came to the house, walked into the first room, and spoke to Robinson. Mullins stated the men were “talking,” not arguing. Thomas left.
¶ 11. About thirty minutes later, Thomas returned with three men. Thomas entered the house with two of the men, and the third stayed outside. According to Mullins, Thomas “asked [Robinson] some questions, and that was about it.” The questions were “something about they said what did they say to sister [sic][?]” Thomas then hit Robinson in the head or upper body with “a leg off a table or something like [that].” Mullins did not know where Thomas got the object. Mullins testified she was sitting next to Robinson on the bed the whole time, and she did not see Robinson attempt to fight back until after Thomas had struck him. When Robinson stood up to fight back, Maurice, one of the men with Thomas, held Robinson down. At this point, Mullins “ran out the door.”
¶ 12. Malley testified that on the day of the murder, he and Weary were in the middle room “getting high,” while Robinson and Mullins had gone into the first room to be alone. Robinson later returned to the middle room, where he sat on the couch to cut up crack. At this point, Thomas knocked on the door. Thomas seemed mad and talked to Robinson about “something that had ... happened about *362 [Robinson] going around by his momma’s house.” Thomas then took Robinson’s bike and, as he left, said something to the effect of: “[TJhis is for the money you owe me.”
¶ 13. Thomas later returned and started kicking the front door. Thomas and two other men entered the house and approached Robinson, who was in the first room cutting up drugs with a knife on an album cover. Thomas yelled at him to put the knife down, but Robinson refused. Thomas then slapped the album cover off his lap. Malley witnessed this from the middle room, behind the curtain. He was about three or four feet away, and could partially see someone pointing a gun at Robinson. After being told two or three times to drop the knife, Robinson complied. He then tried to leave the room, but was pushed back against the wall by one of the men.
¶ 14. While Robinson was being held against the wall, Thomas broke the leg off an end table and yelled: “[B]* * * ⅜, I told you, I told you I was coming back.” According to Malley, Robinson was “steady saying, man, ... why you doing this, man what’s up[?]” Thomas then hit Robinson multiple times in the head with the table leg. Robinson fell, and the men kicked him as he lay on the ground. Robinson was on the floor “shaking real bad.” Malley never saw Robinson become aggressive. At this point, Malley escorted Thomas outside, where Thomas continued “raging [and] cussing.” Thomas then said, “I’m going to go over there and finish his punk a* * off.” Malley became scared and left.
¶ 15. Viewing the evidence in the light most favorable to the State, we find sufficient evidence was presented to prove the elements of depraved-heart murder. Mullins’s and Malley’s testimonies showed that Thomas hit Robinson in the head at least once while he was enraged at Robinson, and, at no point before he was hit did Robinson show aggression toward Thomas. Mullins and Malley were able to identify Thomas in a photographic lineup and at trial. Neither witness could testify as to what occurred between April 24 and April 26, 2008. However, Dr. Paul McGarry, the pathologist, confirmed that Robinson’s death was caused by “a blow to the left side of his head” from a blunt object. Any rational juror could have found that the State had proven all the elements of depraved-heart murder beyond a reasonable doubt. This issue is without merit.
B. Weight of the Evidence
¶ 16. A jury’s verdict will not be reversed unless “it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18) (citation omitted). A motion for a new trial, which challenges the weight of the evidence, should be granted “only in exceptional cases in which the evidence preponderates heavily against the verdict.” Weatherspoon v. State, 56 So.3d 559, 564 (¶20) (Miss.2011) (citation omitted).
¶ 17. Thomas argues the verdict was against the weight of the evidence because Mullins’s and Malley’s testimonies were contradictory, and they were inconsistent with their testimonies at the first trial. He also asserts their testimonies were inherently unreliable because they were admitted drug users and Malley was a “jailhouse snitch.” We acknowledge there were discrepancies in the testimony. However, the discrepancies all relate to extraneous facts — such as what the parties were eating on the day in question (chicken or spaghetti), where the parties were sitting (on a bed or in a chair), where Weary was in the house (the first or middle room), and where a witness went after *363 the incident (home or to Dairy Queen). Also, there was a discrepancy between Malley’s and Dr. McGarry’s testimonies, which was resolved when Dr. McGarry was questioned on the matter. Malley testified that after Thomas struck Robinson, Robinson fell to the ground, and Thomas and his two friends repeatedly kicked and stomped Robinson. Dr. McGarry testified that he saw no injuries on Robinson’s body that indicated Robinson was kicked and stomped; however, he admitted that there could have been bruises that had healed between the altercation and the autopsy.
¶ 18. Also, the jury was made aware of Mullins’s and Malley’s drug use and was told that Malley was a jailhouse informant who sought to remain in county jail in exchange for his testimony. It was the jury’s duty to weigh the testimonies accordingly. See Knight v. State, 72 So.3d 1056, 1061 (¶ 15) (Miss.2011). Thomas argues that other issues should have been brought to the jury’s attention. Specifically, Thomas notes that on the day of the murder, Mullins had neglected to take her prescription medication that prevented hallucinations. Thomas also highlights the fact that Malley did not testify until the second trial that he wanted to remain in county jail because he feared for his safety. However, Thomas was given the opportunity to cross-examine the witnesses on these issues. The failure to do so does not warrant reversal based on the weight of the evidence.
¶ 19. While the issues raised by Thomas may have affected Mullins’s and Mal-ley’s credibility, it is well established that issues of credibility are resolved by the jury. See id. Further, Thomas chose not to testify or present any witnesses, as was his right; but “the jury was nevertheless allowed to give ‘full effect’ to the [S]tate’s evidence” since there was no evidence presented by the defense. Miller v. State, 983 So.2d 1051, 1054 (¶ 10) (Miss.2008) (citing White v. State, 722 So.2d 1242, 1247 (¶ 27) (Miss.1998)). Viewing the evidence in the light most favorable to the verdict, as is required by our standard of review, we cannot find the verdict was against the overwhelming weight of the evidence. See Bush, 895 So.2d at 844 (¶ 18). While there were discrepancies at trial, the witnesses consistently testified that Thomas struck Robinson with a blunt object, and the medical evidence confirmed that this was the cause of Robinson’s death. This issue is without merit.
II. Admission of Testimony
¶ 20. Malley testified that prior to trial, he ran into Thomas and asked him how he was doing. According to Malley, Thomas replied that “everything was going all right, except for his daddy, you know, had done turned [Sjtate on him.” Thomas’s attorney moved for a mistrial, arguing the statement implied that Thomas’s father, Weary, was a “witness for the State,” and the fact that Thomas’s “own father” was against him was so “highly prejudicial” that he “[could not] possibly overcome it.” Thomas’s attorney also cited Malley’s lack of credibility in his motion for a mistrial. The judge denied the motion, finding that the comment was a permissible statement against interest.
¶ 21. Thomas now argues he was unfairly prejudiced because the statement was inadmissible hearsay, violated the Confrontation Clause, was more prejudicial than probative under Mississippi Rule of Evidence 403, and was improper character evidence under Mississippi Rule of Evidence 608(a). The denial of a motion for a mistrial and the admission of evidence are reviewed for abuse of discretion. Gunn v. State, 56 So.3d 568, 571 (¶ 14) (Miss.2011); Tate v. State, 912 So.2d 919, 924 (¶9) *364 (Miss.2005). “The judge is provided considerable discretion to determine whether the remark is so prejudicial that a mistrial should be declared.” Carpenter v. State, 910 So.2d 528, 534 (¶ 23) (Miss.2005) (quoting Roundtree v. State, 568 So.2d 1173, 1177 (Miss.1990)).
A. Hearsay
¶ 22. Hearsay, which is generally not admissible at trial, is defined as “a statement, other than one made by the declar-ant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” M.R.E. 801(c), 802. The trial court found that Malley’s testimony was hearsay, but an exception arose because the statement was against Thomas’s interest as provided for in Mississippi Rule of Evidence 804(b)(3). In order for this exception to apply, the declarant first must be unavailable as a witness. M.R.E. 804(b)(3). Thomas was unavailable since he exercised his right not to testify. See M.R.E. 804(a)(1). Second, the statement must be against the defendant’s interest, meaning it must have “so far tended to subject him to ... criminal liability, ... that a reasonable man in his position would not have made the statement unless he believed it to be true.” M.R.E. 804(b)(3). Thomas’s statement that his “daddy ... had done turned [Sjtate on him” does not meet this requirement. It is not a statement subjecting himself to criminal liability. Rather, it is a vague statement regarding some action his father had taken.
¶ 23. While we cannot agree with the trial court’s reason for finding the statement admissible, we agree with its conclusion. Unlike the trial court, we do not find Malley’s testimony was hearsay. Malley was questioned regarding Thomas’s response as to how he was doing after being arrested for Robinson’s murder. Malley responded that Thomas said he was alright, “except for his daddy ... had done turned [Sjtate on him.” This statement was not made to prove the truth of the matter asserted — that is, it was not intended to prove what Thomas’s father had done. Thus, it does not meet the definition of hearsay. We affirm the admission of the statement, albeit for a different reason than the trial court. See Green v. Cleary Water, Sewer & Fire Dist., 17 So.3d 559, 572 (¶ 42) (Miss.2009) (citation omitted) (“[Ijt is well established in our jurisprudence that the right result reached for the wrong reason will not be disturbed on appeal.”).[2] Likewise, we find the trial court did not abuse its discretion in denying the motion for a mistrial.
B. Confrontation Clause
¶ 24. Thomas argues that the admission of Malley’s statement was a Confrontation Clause violation. The Confrontation Clause of the Sixth Amendment guarantees that “[ijn all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” See Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
¶ 25. Thomas’s argument regarding Weary’s unavailability to testify is misplaced. The person who made the statement was Thomas, not Weary. Thus, Weary’s availability is irrelevant.
¶ 26. Regardless, the Confrontation Clause only applies to statements that are “testimonial” in nature, such as “a solemn declaration or affirmation made for the purpose of establishing or proving some fact.’ ” Neal v. State, 15 So.3d 388, *365 403 (¶ 34) (Miss.2009) (quoting Crawford, 541 U.S. at 51, 124 S.Ct. 1354). The statement here was not testimonial. It was not made under oath or for the purpose of later establishing a fact in a court proceeding. Rather, it was a statement made in a casual conversation. This issue is without merit.
C. Mississippi Rule of Evidence 403
¶27. Mississippi Rule of Evidence 403 states that “evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice_” Thomas argues the implication that one’s own father is against him is so unfairly prejudicial that a mistrial was warranted. Malley testified that Thomas said his father “had done turned [Sjtate on him.” Thomas has not shown how this statement was prejudicial. The statement, read alone, does not say what Thomas argues it does — that is, that Thomas’s father had turned him in to the police for murder. The testimony was vague and did not implicate Thomas’s guilt. We cannot find the trial court abused its discretion in admitting the statement or denying the motion for a mistrial. This issue is without merit.
D. Mississippi Rule of Evidence 608(a)
¶ 28. Thomas’s argument regarding improper character evidence is procedurally barred because it is being raised for the first time on appeal. See Caston v. State, 823 So.2d 473, 503 (¶ 102) (Miss.2002). Rule 608(a) states:
The credibility of a witness may be attacked ... by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
Regardless, Malley’s testimony was not character evidence under Rule 608(a). This issue is without merit.
III. Ineffective Assistance of Counsel
¶ 29. Thomas argues he was denied a fair trial because his counsel was ineffective. Specifically, Thomas asserts that his attorney was ineffective by failing to make an opening statement, failing to propose any jury instructions, failing to call a witness at trial, and failing to withdraw as counsel due to a conflict of interest.
¶ 30. In order to prove his counsel was ineffective, Thomas must show: (1) “that [his] counsel’s representation fell below an objective standard of reasonableness”; and (2) “there is reasonable probability that, but for [his] counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Before reaching this analysis, however, we must decide if this issue is proper for direct appeal. Mississippi Rule of Appellate Procedure 22(b) states in relevant part: “Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record.”
¶ 31. One of the four arguments raised by Thomas is apparent from the record — that is, that his appointed counsel should have withdrawn due to a conflict of interest. During trial, Thomas’s attorney recognized one of the witnesses, Malley, but could not recall where the two had met. Fearing that he had represented Malley in the past, he informed the judge there may be a conflict of interest. A hearing was held, and Malley recalled that Thomas’s attorney had agreed to represent him on a grand-larceny charge, but *366 withdrew from representation because Malley paid him with a bad check. Malley then retained another attorney, who represented him in the matter. Malley never met with Thomas’s attorney, and they did not engage in any privileged conversations. After hearing this, Thomas was asked if he wanted to proceed with his attorney’s representation. Thomas agreed to proceed and expressly waived any conflict.
¶ 32. Mississippi Rule of Professional Conduct 1.9, regarding conflicts of interest due to the attorney’s representation of a former client, is inapplicable because Thomas’s attorney did not obtain any privileged information from Malley. Also, it does not apply because Malley’s grand-larceny charge is entirely unrelated to Thomas’s murder charge. Regardless, Thomas was aware of the brief former representation and agreed to waive any conflict. This issue is without merit.
¶ 33. Thomas’s remaining ineffective-assistance-of-counsel arguments are improper for direct appeal. He argues his attorney was ineffective because he chose to reserve his opening statement, but never made an opening statement. Thomas also argues his attorney was ineffective for proposing no jury instructions, and specifically for failing to propose a theory-of-the-case instruction and cautionary instructions on Mullins’s and Malley’s drug use and Malley’s credibility as a jailhouse informant. Finally, Thomas argues a federal inmate had crucial information about Thomas’s co-indictee, Maurice, and should have been called to testify. These choices may have been permissible trial strategy on the part of Thomas’s counsel, but the record lacks any evidence one way or the other. Based on the record, we cannot determine why Thomas’s counsel made these decisions. Since we are not allowed to speculate on counsel’s motives, these matters are more appropriate for post-conviction-relief proceedings where additional evidence can be introduced. See Mitchell v. State, 90 So.3d 584, 596-97 (¶ 35) (Miss.2012).
IV. Prosecutorial Misconduct
¶ 34. Thomas argues that the prosecution misled the jury by basing its questioning at the second trial on what was learned at the first trial — that is, if the prosecutor did not like a witness’s response to a question in the first trial, the question was reworded during the second trial to elicit or avoid certain testimony. No objection was made to this at trial; thus, this argument is waived. See Caston, 823 So.2d at 503 (¶ 102). Further, even if the questions were misleading, Thomas had an opportunity to clarify the testimony on cross-examination.
¶ 35. Thomas next argues the prosecutor made misleading statements in closing that indicated Malley’s and Mullins’s testimonies were consistent, when they were not. The jury heard the testimonies and was aware of any inconsistencies, and the jury was instructed that arguments of counsel were not evidence. This issue is without merit.
V. Cumulative Errors
¶ 36. As we have found no error in the issues raised, we likewise find no cumulative errors warranting reversal.
VI. IFP Status
¶ 37. For purposes of the trial, Thomas was granted IFP status and was represented by a court-appointed attorney. However, he retained his own counsel on appeal. A hearing was held on Thomas’s indigent status for appeal. In denying the IFP request, the trial court pointed out that the counsel retained by Thomas was “a well-known[,] noted criminal defense attorney” who was considered “one of the *367 best attorneys on the coast ... in the field of criminal law.”
¶ 38. “[T]he determination of indigent status ... [is] left to the sound discretion of the trial judge.” Clay v. State, 757 So.2d 236, 239 (¶ 12) (Miss.2000) (citing Gerrard v. State, 619 So.2d 212, 218 (Miss.1993)). “Such judgment shall not be overturned unless there is a showing of manifest error or abuse of discretion.” Id.
¶ 39. We cannot find the trial judge abused his discretion in denying Thomas IFP status. Although Thomas was indigent at the time of trial, he had obtained funds to retain counsel on appeal. There is no need to burden the taxpayers with the cost of this appeal when Thomas has the means to hire his own counsel. This issue is without merit.
¶ 40. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF DEPRAVED-HEART MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Maurice was indicted with Thomas, but the charges were dismissed.

. The State argues that the statement is admissible as an admission by a party-opponent under Mississippi Rule of Evidence 801(d)(2). As we have found that the statement does not meet the definition of hearsay, there is no need to address this argument.